UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DANIEL W. ISENBARGER, ) | |
| ) | |
| *Petitioner,* ) | |
| ) | |
| v. ) | C.A. No. 06-1054 (JDB) |
| ) | |
| KENNETH L. FARMER JR., ) | |
| ) | |
| *Respondent.* ) | |

REPLY TO RESPONDENT'S RESPONSE
TO ORDER TO SHOW CAUSE

Respondent cannot undo his facially invalid action only in response[1] to this lawsuit while in the same breath asserting the authority to repeat it and expect to escape judicial review. His effort to do so suggests an "Alice in Wonderland" world where every agency action is in a state of flux, always subject to reconsideration and never subject to judicial review. This is every official's dream and every citizen's nightmare.

Respondent's ripeness (at 3-4) and exhaustion (at 6) theories do not support his effort to avoid judicial review.

I

THE CASE IS RIPE FOR JUDICIAL REVIEW

Respondent's claim (at 3-4) that there is no present "case or controversy" because the "agency action which [Petitioner] challenged in his application is not

---

[1] See note 2 *infra*.

yet final" is incorrect and circular. Respondent's prior effort to extend Petitioner's Active Duty Service Obligation (ADSO) coupled with his assertion of the right to do so again make this case ripe for immediate review. Moreover, (a) the controversy is a purely legal one, (b) there is no material dispute of fact, and (c) Respondent will not be harmed by judicial review, while Petitioner will be harmed without it.

A

The Controversy is a Purely Legal One

At issue is whether Petitioner's written training agreement, Pet. Ex. 4, and, in particular, the June 30, 3007 ADSO expiration date stated therein, is subject to unilateral modification by the Army. He asserts that Respondent is bound by the plain language of the agreement and express ADSO provision, and that Respondent does not have the right to extend it unilaterally.

In contrast, while Respondent voluntarily "restored" (at 1, 7) Petitioner's ADSO to June 30, 2007 during the pendency of this litigation,[2] he has by no means committed himself to that date. Nor has he conceded that his effort to extend Petitioner's ADSO was illegal. Indeed, by claiming (at 3) that the challenged action "is not yet final," and leaving open (at 4) the option to "finally change[] Petitioner's ADSO," Respondent is implicitly asserting or reserving—albeit incorrectly—the right to once again extend the ADSO. That is precisely the problem. The purpose of

---

[2] Respondent insists (at 1, 7) that "[t]he ADSO that Petitioner challenges was restored to June 30, 2007, *independent* of Petitioner's Application" (emphasis added), but conspicuously neglects to state the date or basis on which he did so. Also, given the circumstances, the words "independent of" as opposed to "prior to" clearly imply that Respondent "restored" the ADSO only *after* this action was filed.

2

having a written contract is to memorialize the parties' respective rights and obligations. Respondent defeated that purpose by converting what was supposed to be a fixed material term into a moving target.

That action is not an exercise of agency discretion, but a breach of contract. The Department of Defense Office of General Counsel admitted as much when it opined that "service contracts would be meaningless if one party to them was free to alter material terms." Pet. Ex. 6.

Contrary to Respondent's suggestion (at 3), this is not an "abstract disagreement over administrative policies." Instead, it is purely a legal dispute about a single material term in an existing contract between the parties. That contract, Respondent's published order purporting to extend the ADSO stated therein, Pet. Ex. 5,[3] and his assertion of the right to do so again frame the legal issue: whether Petitioner's June 30, 2007 ADSO is subject to unilateral modification by the Army. There is clearly a concrete setting for judicial review at this time.

B

There is No Dispute of Material Fact
or Need for Factual Development

The material facts are straightforward and not in dispute. No factual development is needed.

Consistent with 10 U.S.C. § 2005, Respondent prepared the written active duty agreement at issue. Pet. Ex. 4. It provides that Petitioner shall incur an ADSO in exchange for graduate medical education. It further states that his ADSO expires

---

[3] Respondent never published a rescission.

3

on June 30, 2007. Petitioner relied on this representation when he accepted the contract. Respondent, however, disregarded this specific and unambiguous provision by purporting to extend the ADSO by three years, until June 30, 2010. Pet. Ex. 5. Respondent has pointed to no genuine issue of material fact, and we know of none.

### C

### Respondent Will Not be Harmed by Judicial Review, While Petitioner Will be Harmed Without it

Respondent does not claim that the Army would suffer any burden as a result of judicial review at this time. On the other hand, there is no question that Petitioner is injured by Respondent's unlawful extension of his ADSO and that he is suffering continuing adverse consequences as a result.

The uncertainty surrounding the date on which Petitioner's active duty obligation expires prevents him from planning and preparing for his post-military career and life. To get his personal affairs in order and secure civilian employment in his field of medicine, he needs advance notice and confirmation as to the date on which his military obligation will end and civilian employment may begin. Federal employees, including military officers, cannot be expected to postpone all such plans until the day after their last day of federal service, especially where, as here, the hiring process for those individuals can take several weeks if not months.

Respondent's failure to admit error, assertion of the right to further modify the ADSO, and indication that it is currently considering whether to do so again constitute injury and the threat of repeated injury, and more than satisfy the case

or controversy requirement. *Spencer v. Kemna*, 523 U.S. 1 (1998) (to satisfy case or controversy requirement "plaintiff must have suffered, or be threatened with, an actual injury traceable to the respondent and likely to be redressed by a favorable judicial decision").

The contract at issue is designed to protect Petitioner against the very sort of actual and threatened injury from which he is suffering. A favorable ruling, one which enforces the contract and prohibits the Army from extending Petitioner's ADSO unilaterally, will therefore redress these wrongs. *Zivotofsky v. Secretary of State*, 444 F.3d 614, 618 (D.C. Cir. 2006) (when plaintiff is object of government action or inaction "there is ordinarily little question, for purposes of standing, that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it") (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992)).

II

THIS CASE IS NOT MOOT BECAUSE IT
PRESENTS BOTH A VOLUNTARY CESSATION
OF UNLAWFUL CONDUCT AND A CONTROVERSY
CAPABLE OF REPETITION YET EVADING REVIEW

Although Respondent framed (at 3-4) his initial argument in terms of "ripeness," is really a suggestion of mootness. Even so, by restoring Petitioner's ADSO to June 30, 2007, Respondent effectively (if not expressly) admitted error, but did not render this case moot. This case presents both a "voluntary cessation of unlawful conduct" and a controversy "capable of repetition yet evading review."

A

Voluntary Cessation of Unlawful Conduct

Respondent's restoration of Petitioner's ADSO is a transparent effort to avoid an adverse ruling.

It is settled law that "[m]ere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave '[t]he defendant ... free to return to his old ways.'" *United States v. Concentrated Phosphate Export Assn., Inc.*, 393 U.S. 199, 203 (1968) (citing *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953)); *see also City of Mesquite v. Alladin's Castle, Inc.*, 455 U.S. 283, 288-89 (1982). While it is true that "[a] case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," *Concentrated Phosphate*, 455 U.S. at 203 (emphasis added), that is hardly the situation here. Moreover, "[t]he heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to recur lies with the party asserting mootness." *Friends of the Earth, Inc. v. Laidlaw Environmental*, 528 U.S. 167, 170 (2000) (citing *Concentrated Phosphate*, 455 U.S. at 203). "[A] defendant claiming that its voluntary compliance moots a case bears a formidable burden." *Friends of the Earth, Inc., supra*, at 170. The purpose for this heavy burden is to protect a party from an opponent who seeks "to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior." *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n. 1 (2001) (citation omitted).

The record in this case and Respondent's own answer preclude him from satisfying his burden:

1. On January 15, 2004, more than two years ago, Petitioner and Respondent entered a training agreement which expressly provides a June 30, 2007 ADSO. Pet. Ex. 4.

2. On March 9, 2006, contrary to the contract's plain language, Respondent purported to unilaterally extend Petitioner's ADSO by three years. Pet. Ex. 5.

3. On May 3, 2006, Petitioner objected and asked the Army to confirm that his ADSO expires on June 30, 2007. Pet. Ex. 7. Petitioner provided the relevant documents and information with his request, and advised the Army that he would seek judicial relief if it did not furnish the requested confirmation within ten business days from the date of his letter. *Id.*

4. Respondent confirmed receipt of the letter, Pet. Ex. 8, but completely failed to respond, despite having had more than a month to do so. Petitioner waited until June 8, 2006 to file this action. Dkt. No. 1.[4]

5. Respondent voluntarily "restored" Petitioner's ADSO to June 30, 2007, Dkt. No. 5, at pp. 1, only *after* Petitioner filed this lawsuit.[5] Respondent is not bound by this decision.

6. As far as we know, Respondent never published an order rescinding his March 9, 2006 order. Aside from his answer, Respondent never notified Petitioner that he had "restored" his ADSO.

7. Respondent did not commit himself to the June 30, 2007 ADSO. Nor did he expressly concede that his effort to extend Petitioner's ADSO is illegal or disclaim any intention to further modify it. Dkt. No. 5,

---

[4] Petitioner originally filed this action on June 7, 2006 as a combined application for writ of habeas corpus and complaint for declaratory judgment. Pet. Ex. 9. The Clerk of the Court returned the complaint and stated that such actions could not be combined. Pet. Ex. 10. We re-filed the case as an application for writ of habeas corpus the following day. Dkt. No. 1. We reserve the right to re-file our complaint for declaratory judgment or amend our petition to include it as alternative relief. One way or another, Petitioner has a right to judicial review and labeling or format should not be permitted to thwart that right.

[5] *See* note 2 *supra.*

*passim*. In other words, Respondent offers no assurance whatever that he will not return to his "old ways."

8. To the contrary, Respondent candidly indicated that the Army is in the process of considering whether to once again modify Petitioner's ADSO. Dkt. No. 5, at p. 4.

In light of this record there can be no doubt that there is "some cognizable danger of recurrent violation." *W.T. Grant Co., supra*, 345 U.S. at 633, and Respondent therefore cannot escape a judicial determination of the parties' right and obligations under the training agreement. The real and imminent threat of another unlawful extension of Petitioner's ADSO infringes on his liberty by impeding his ability to order his own personal and professional affairs.

B

Capable of Repetition Yet Evading Review

This case also presents a controversy that is "capable of repetition yet evading review." *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911).

This exception to the mootness doctrine applies where: "(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party will be subject to the same action again." *Spencer, supra*, 523 U.S. at 17 (alterations in original) (internal quotations and citations omitted).

Here, the "evading review" prong is easily satisfied. The Army has twice modified Petitioner's ADSO—and is thinking about doing so again—within the span of less than six months. Both the Supreme Court and the Court of Appeals have found controversies of considerably longer duration to be too short to be fully

litigated. *See Southern Pacific Terminal Co., supra,* 219 U.S. at 514-16 (two years too short and evades judicial review); *First National Bank of Boston v. Bellotti,* 435 U.S. 765, 774 (1978) (18 months too short); *In re Reporters Comm. for Freedom of the Press,* 773 F.2d 1325, 1329 (D.C. Cir. 1985) (controversy spanning less than two years evades review).

For the "capable of repetition" prong, "[t]he core decision is 'whether the controversy is *capable* of repetition and not ... whether the claimant ha[s] demonstrated that a recurrence of the dispute [is] more probable than not.'" *Doe v. Sullivan,* 938 F.2d 1370 (D.C. Cir. 1991) (citing *Honig v. Doe,* 484 U.S. 305, 318 n.6 (1988)(emphasis in original)). The analysis of this prong is almost identical to the "voluntary cessation" analysis above—*i.e.,* whether subsequent events made it *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur. This case is therefore "capable of repetition" for the same reasons it satisfies the "voluntary cessation" test.

It is reasonably foreseeable that the Army will once again try to extend Petitioner's ADSO because Respondent: (1) ignored our pre-litigation request to resolve this controversy; (2) "restored" Petitioner's ADSO, it would appear, only after we filed this lawsuit; (3) still has not committed to the June 30, 2007 ADSO, much less conceded that his prior effort to extend it was illegal; or (4) provided any assurance that he will refrain doing so again. Indeed, Respondent not only asserts the authority to do so, but indicates that he is in the process of considering whether to do so. No contingencies would have to occur before that could happen. The fact

that the Army has unilaterally both issued and retracted the challenged action within the span of a few months makes it distinctly "capable of repetition, yet evading review" by the federal courts.

Under *Southern Pacific Terminal Co.* and its progeny, this case is not moot.

### III

### HABEAS IS APPROPRIATE TO CHALLENGE RESPONDENT'S UNLAWFUL EFFORT TO EXTEND PETITIONER'S SERVICE OBLIGATION

Respondent's claim (at 5-6) (emphasis added) that the Court lacks jurisdiction because Petitioner "is not *currently* unlawfully in the Army's custody" is without merit.

It is well established that "habeas corpus relief is not limited to immediate release from illegal custody, but that the writ is available as well to attack future confinement and obtain future releases." *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973); *see also Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 488-89 (1973); *Peyton v. Rowe*, 391 U.S. 54, 67 (1968). The Supreme Court has made clear that "the federal habeas corpus statute does not deny the federal courts power to fashion appropriate relief other than immediate release." *Preiser, supra,* at 487 (citing *Peyton*).

There is no question that Petitioner is subject to military orders and in the custody of the Army for purposes of 28 U.S.C. § 2241. *Rooney v. Secretary of the Army*, 405 F.3d 1029, 1032 (D.C. Cir. 2005) (citing *Parisi v. Davidson*, 405 U.S. 34 (1972); *Oestereich v. Selective Serv. Sys. Local Bd.*, 393 U.S. 233 (1968)). The fact

that his current custody is lawful and he is not seeking immediate release is of no moment. He is challenging Respondent's unlawful attempt to extend the duration of his service obligation and assertion of authority to do so again. This situation is analogous to cases in which a prisoner in lawful custody files a habeas to challenge the lawfulness his or her parole eligibility date. Habeas is an appropriate, if not exclusive, remedy since the resolution of the controversy will have a "probabilistic impact" on the duration of his ADSO and future release date.[6] *Bourke v. Hawk-Sawyer*, 269 F.3d 1072, 1074 (D.C. Cir. 2001) (habeas is exclusive remedy to challenge parole eligibility "even though success upon his claims would not necessarily result in his earlier release") (citing *Razzoli v. Federal Bureau of Prisons*, 230 F.3d 371 (D.C. Cir. 2000)).

Under Respondent's "custody" theory, Petitioner would have to wait until July 1, 2007, the day *after* his ADSO expires, to challenge any unlawful effort to extend his service obligation. *Peyton* emphatically rejects this "prematurity" theory. *Peyton, supra*, 391 U.S. at 57-58.

IV

EXHAUSTION IS NOT REQUIRED

Respondent's exhaustion theory (at 6) is also without merit.

---

[6] Respondent's suggestion (at 5) that "other possible events," such as a "stop loss policy," could extend Petitioner's term of service is a red-herring and irrelevant. Respondent did not cite a stop loss order as his basis for altering a material term in Petitioner's training agreement. Petitioner will confront a stop loss order if and when one is issued.

11

Petitioner has no duty to resort to the Army Board for Correction of Military Records (ABCMR) as a condition to securing a judicial determination of the issue because Congress has not required such exhaustion. *Darby v. Cisneros*, 509 U.S. 137, 154 (1993); *Rooney v. Secretary of the Army*, 293 F. Supp.2d 111, 123 n.14 (D.D.C. 2003) (citing *Darby*), *vacated on other grounds*, 405 F.3d 1029 (D.C. Cir. 2005); *Wilhelm v. Caldera*, 90 F. Supp.2d 3, 7 (D.D.C. 2000); *Kosnik v. Peters*, 31 F. Supp.2d 151, 157 (D.D.C. 1998).

Even if exhaustion were required, Petitioner has more than discharged it. He objected to Respondent's order extending his ADSO and demanded corrective action. Respondent had ample notice and opportunity to correct his errors, but declined to do so prior to this litigation.

Respondent's exhaustion theory also undercuts his ripeness claim (at 3-4). That is, by claiming (at 6) that "Petitioner chose to forgo *available* administrative remedies" (emphasis added), Respondent must concede that there is a final agency action for the ABCMR to review. Action that is final for purposes of an administrative appeal is also final for purposes of the case and controversy requirement. Respondent cannot have it both ways.

Respondent's suggestion (at 6) that Petitioner failed to check the status of his ADSO before filing this action is without merit. Petitioner sent a detailed lawyer-letter and copies of the pertinent documents to Respondent seeking confirmation of his ADSO. Pet. Ex. 7. While Petitioner expressed a desire to avoid litigation, he explained that he would have no choice but to pursue judicial relief if he did not

receive confirmation from the Army. Respondent confirmed receipt of the letter, Pet. Ex. 8, but failed to respond to the substance, despite having ample time to do so. The clear implication of Respondent's claim (at 1, 7) that he "restored" Petitioner's ADSO "independent" of this action is that he did so only *after* the case was filed. In any event, we are not clairvoyant, and the onus is on Respondent to answer his mail and issue a rescission of his unlawful orders.

## Conclusion

For the foregoing reasons and those previously stated, a writ of habeas corpus should issue ordering Respondent to discharge Petitioner on or before June 30, 2007 from the United States Army in accordance with his active duty service agreements, and declaring that his ADSO expires on June 30, 2007. The Court should further direct Respondent to remove from Petitioner's record all reference to the purported extension of his ADSO from June 30, 2007 to June 30, 2010, and grant such other and further relief as may, in the circumstances, be just and proper.

Respectfully submitted,

*[signature]*

Matthew S. Freedus (475887)
Eugene R. Fidell (112003)
Feldesman Tucker Leifer Fidell LLP
2001 L Street, N.W.
Second Floor
Washington, D.C. 20036
(202) 466-8960

*Attorneys for Petitioner*

August 28, 2006