UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DANIEL W. ISENBARGER )
7543 Spring Lake Drive, Apt. D1 )
Bethesda, MD 20817, )
 )
                        *Petitioner*, )
 )
       v. )                          C.A. No.
 )
Major General )
KENNETH L. FARMER JR. )
Commander )
Walter Reed Army Medical Center )
6900 Georgia Ave., N.W. )
Washington, DC 20307, )
 )
                        *Respondent*, )
 )
       and )
 )
SECRETARY OF THE ARMY )
The Pentagon )
Washington, DC 20310-0104, )
 )
                        *Defendant*. )

APPLICATION FOR WRIT OF HABEAS CORPUS AND
COMPLAINT FOR DECLARATORY JUDGMENT

**Jurisdiction**

1.    The Court has federal question jurisdiction under 28 U.S.C. §§ 1331
and 2241; the due process clause of the Fifth Amendment; 10 U.S.C. §§ 2005, 2120
*et seq.*; Department of Defense (DoD) directives [Directive 6000.2, "Minimum Terms
of Service and Active Duty Obligations for Health Service Officers" (March 19, 1981)

(and subsequent iterations)]; and active duty service agreements between petitioner and the Secretary of the Army.

2.    This is an action for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. It is also an action for declaratory and injunctive relief pursuant to 28 U.S.C. § 2201 for the purpose of determining a question of actual controversy between the parties, as hereinafter appears more fully.

### Venue

3.    Venue is proper because petitioner, as explained more fully below, is in custody in this District for habeas corpus purposes.

### Parties

4.    Petitioner is a United States citizen who resides at the address stated in the caption. He is a lieutenant colonel in the United States Army, and is assigned as a medical officer in Interventional Cardiology at Walter Reed Army Medical Center (WRAMC), Washington, DC. He is currently deployed to Iraq in support of Operation Iraqi Freedom.

5.    Respondent is commander of the installation to which petitioner is assigned. The installation is located at the address stated in the caption, and is within this District.

6.    Defendant is the Secretary of the Army.

## Statutory and Contractual Framework

7.    10 U.S.C. § 2005(a) provides that the Secretary concerned "may require, as a condition to the Secretary providing advanced education assistance to any person, that such person enter into a written agreement with the Secretary..."

8.    10 U.S.C. § 2005(b) provides that the Secretary "shall determine the period of active duty to be served by any person for advanced education assistance to be provided such person by an armed force, except that if the period of active duty required to be served is specified under another provision of law with respect to the advanced education assistance to be provided, the period specified in the agreement referred to in subsection (a) shall be the same as the period specified in such other provision of law."

9.    The written active duty agreement at issue provides that petitioner shall incur an Active Duty Service Obligation (ADSO) in exchange for Graduate Medical Education (GME).

## Facts

10.    On July 15, 1986, petitioner signed a Health Professions Scholarship Program (HPSP) contract to attend medical school at Yale University. Ex. 1. In exchange for tuition and educational expenses, he incurred a four-year ADSO.

11.    At the time he signed the HPSP contract, the March 19, 1981 version of DoD Directive 6000.2, "Minimum Terms of Service and Active Duty Obligations for Health Service Officers," was in effect.

3

12.    On April 8, 1988, DoD revised the directive. In doing so, it increased the ADSO for time spent in military-sponsored GME programs, but only for those officers who signed an HPSP contract *after* the revised directive's effective date. The directive expressly provided that it shall not be applied to change an ADSO or active duty agreement entered into in writing before April 8, 1988. *See* DoD Directive 6000.2 (April 8, 1988), ¶ G.

13.    In September 1988, Colonel Joseph E. Salko, Director, Manpower, Personnel and Training, requested a legal opinion from the DoD Office of General Counsel concerning the revised directive's retroactive effect, if any, on service obligations.

14.    On October 20, 1988, the Office of General Counsel responded with a written opinion and, in essence, concluded that the modification of a directive does not provide a sufficient legal basis to alter active duty obligations previously agreed to by the parties to a service agreement.

15.    In May 1991, petitioner graduated from medical school and entered on active duty. He served his first tour—from 1991 to 1994—as a resident in internal medicine at WRAMC.

16.    From 1994 to 1996, he served a two-year utilization tour as a staff officer in internal medicine at William Beaumont Army Medical Center at Fort Bliss, Texas.

17.    On January 6, 1996, the Army selected petitioner for a three-year residency/fellowship training in infectious disease at Brooke Army Medical Center,

4

Fort Sam Houston, Texas. The Army's proposed GME agreement correctly stated that his ADSO, at the time, would expire on June 30, 1998. The contract distinguished between officers who entered HPSP contracts before April 8, 1988 and those who entered thereafter for purposes of calculating GME service obligations. The Army correctly applied the pre-1988 rules to calculate the ADSO he would have incurred had he accepted the offer. In particular, the agreement indicated that he would have incurred a two-year ADSO in exchange for this three-year GME in a military facility. Ex. 2 at ¶ 6.

18.    Petitioner declined the offer.

19.    From 1996 to 2001, petitioner served as a staff medical investigator at Walter Reed Army Institute of Research (WRAIR), including a two-year assignment at its satellite laboratory in Bangkok, Thailand. In 1998, during this tour, he completed his initial four-year ADSO.

20.    In January 2001, after serving three years as a non-obligated officer, the Army selected petitioner for a three-year GME fellowship in cardiology at WRAMC. Ex. 3. The contract consists of two documents: the agreement and the ADSO memorandum.[1] Both documents appear on official Army letterhead. The ADSO memorandum is signed by Colonel Larry K. Hammerbacher, GS, Chief, Health Services Division, U.S. Total Army Personnel Command, Alexandria, Virginia. It states, in pertinent part, that:

---

[1] There was no need for this memorandum under the earlier version of the Army's GME agreements, *e.g.*, Ex. 2, because the ADSO was stated within the text of the document.

> Your training program is scheduled to begin on July 01, 2001 and end on June 30, 2004. Should you accept this training, your new ADSO upon successful completion, will end on **June 30, 2006**. This new ADSO calculation was based upon your current Army GME selection and your previous obligations. If any facet of your selected program changes or you fail to complete the program, your ADSO may require recalculation.

> Please acknowledge receipt of this correspondence and indicate your acceptance of your adjusted ADSO by initialing in the space provided and return to Commander, U.S. Total Army Personnel Command . . .

*Id.* (emphasis in original).

21.    The Army, again, correctly applied the 1981 version of DoD Directive 6000.2 to calculate the ADSO that petitioner would incur under this contract. In particular, the ADSO memorandum indicated that, if he were to accept the Army's offer, he would incur a two-year ADSO for this three-year training program in a military facility.

22.    On June 16, 2001, having reasonably relied on Colonel Hammerbacher's representations, petitioner signed the contract and ADSO memorandum to "acknowledge acceptance of [his] new additional training obligation and new adjusted ADSO of **June 30, 2006**." *Id.* (emphasis in original).

23.    On January 12, 2004, the Army selected petitioner for a one-year partially-funded GME training in interventional cardiology at Johns Hopkins University School of Medicine, in Baltimore. Ex. 4. The GME contract, like the prior one, distinguished between pre- and post-1988 HPSP contracts for purposes of calculating GME service obligations. The ADSO memorandum was signed by Colonel Felipe Casso, GS, Chief, Health Services Division, and specified that:

6

Your training program is scheduled to begin on July 1, 2004 and end on June 30, 2005. Should you accept this training, your new ADSO upon successful completion, will end on June 30, 2007. This new ADSO calculation was based upon your current Army GME selection and your previous obligations. If any facet of your selected program changes or you fail to complete the program, your ADSO may require recalculation.

Please acknowledge receipt of this correspondence and indicate your acceptance of your adjusted ADSO by initialing in the space provided and return to [the HRC].

*Id.* (emphasis in original).

24.    For the third time in a row, the Army applied the 1981 version of DoD Directive 6000.2 to calculate the ADSO petitioner would incur under a GME program. The ADSO memorandum indicated that he would incur a one-year ADSO for this one-year training program in a military facility.

25.    On June 15, 2004, again having reasonably relied on the Army's representations, petitioner signed the contract and ADSO memorandum to "acknowledge acceptance of [his] new additional training obligation and new adjusted ADSO of June 30, 2007." *Id.* (emphasis in original).

26.    In January 2006, with the understanding that his ADSO expires on June 30, 2007, petitioner volunteered for a five-month tour in Iraq. He deployed on or about May 7, 2006 and is scheduled to return on or about October 17, 2006.

27.    On or about March 9, 2006, Major Terry G. Owens, Chief, Personnel Services Branch (PSB), Human Resources Command, Alexandria, Virginia, sent a memorandum to petitioner indicating that the Army had miscalculated his GME

ADSO and was extending it by three years, despite the signed agreement to the contrary. Ex. 5. In particular, Major Owens stated:

> A review of your active duty service obligation (ADSO) for training was conducted by this office. This review indicated that a misinterpretation of DoD instruction, Medical Manpower and Personnel, June 30, 1997, 6000-13, para 6.6.3.1 and para 6.6.3.2 whereby, your ADSO of June 30, 2007, should actually read 30 June 2010.
>
> The review of your record indicates that you have a three-year obligation for Cardiology residency training, (1 July 2001—30 July 2004) and a 2 year obligation for your Interventional Cardiology fellowship training (1 July 2004—30 June 2005). Although you signed a training agreement obligating you until 30 June 2007, it is amended by this notification.

28.    Major Owens identified herself and a civilian representative of the PSB, Mr. Ledger Rash, as the points of contact for the matter.

29.    On or about March 13, 2006, petitioner spoke with Major Owens and Mr. Rash at the PSB. The conversation went as follows:[2]

| LTC Isenbarger: | Pardon me. I'm looking for Major Terry Owens or Mr. Rash. |
|---|---|
| MAJ Owens: | I'm sorry to keep you waiting, Colonel Isenbarger. I was wondering when you'd show up here. |
| LTC Isenbarger: | You were? Why? |
| MAJ Owens: | Before you say anything, let me just say that I'm very sorry about this. I completely disagree with what they're doing to you, and it puts us in a difficult position when we have to deal face-to-face with the soldiers when they come in. |

---

[2] Petitioner prepared this full account at the request of counsel.

8

LTC Isenbarger:      You do?  What do you mean?  What exactly is being done?

MAJ Owens:           They are retroactively applying the new GME rules, even though you signed your HPSP contract prior to the change.   Your ADSO previously was correctly calculated according to the pre-1988 rules, because you signed your original HPSP contract in 1986.  Prior to your case, all GME ADSO's have been calculated according to pre-1988 rules when the HPSP contract was signed before the new rules went into effect in 1988. You are the only pre-1988 officer to have your ADSO retroactively recalculated using the new rules. When they asked us last year about the accuracy of your contract, we looked it over carefully and told them multiple times that the calculation was correct, but they kept trying to find a way to extend your obligation until they finally came up with this new change just recently.

LTC Isenbarger:      Is this Colonel Jaffin and Colonel Powers who are pushing this?

MAJ Owens:           Yes, it's their idea.

LTC Isenbarger:      Well, explain to me the difference in the pre-88 and post-88 rules as they apply to my GME contracts?

LTC Isenbarger:      Mr. Rash, can you come here please? This is Mr. Ledger Rash, who has been dealing with ADSO calculations for some time.

LTC Isenbarger:      How are you Mr. Rash? It's a pleasure.

Mr. Rash:            How are you doing, sir? Yes, according to the pre-88 rules, you incurred a two-year obligation for your three-year cardiology GME training at a military institution.  The obligation for your one-year interventional cardiology training at a civilian facility is one-year, paid back

9

concurrently with the pre-existing two-year obligation, since you already owed that from the cardiology training. The total obligation then was correctly calculated originally as two years after your civilian training, and the completion date also correct at 30 June 2007. Under the post-88 rules, one would incur a half-year obligation per half-year of training in a military facility, for a total of three-years for the cardiology training, and another two-years in addition, for the one year of civilian interventional cardiology training, for a total of 5 years, which is the revised ADSO made by Colonel Powers. So there was no calculation error made previously, but rather a change in which rules were applied, which has never been done before. You are the only officer to whom this is being done. The other officers mentioned in Colonel Powers memo all had actual calculation errors that justified a correction, but the rules applied for the calculation were not changed as in your case.

LTC Isenbarger:     How can they do that, change the rules in the middle of the game? You can't selectively apply the rules differently to one officer. I signed the same HPSP contract that everybody else did back then. There is nothing unique about my contract. The rules should be applied the same to me as to everyone else of my era. There is 25 years of precedent here for pre-88 officers training obligations that are being completely ignored.

MAJ Owens:          You've got a strong case, and I think you've got an excellent chance of reversing this, but you need to appeal to the Army Board for Correction of Military Records to make that happen. I'd start with JAG and go from there.

LTC Isenbarger:    Well, thanks for your professionalism and
                   integrity. I appreciate that. Can I have your
                   card for future reference? Thanks and take care.

30.    The Johns Hopkins GME contract plainly states that petitioner's
service obligation expires on June 30, 2007. The Army acknowledged (Ex. 5, at ¶ 2)
that he "signed a training agreement obligating [him] until 30 June 2007," but
completely disregarded it and purported to extend his obligation by three years.

31.    The Army never sought, much less obtained, his consent to modify the
agreement.

32.    This unilateral action is also completely unsupported by consideration.
It works entirely to the Army's benefit and petitioner's detriment.

33.    The fact that the Army is suffering from manpower and retention
problems is not a valid basis to unilaterally alter ADSOs previously agreed to by the
parties to a contract.

34.    The Army's claim (Ex. 5 at ¶ 1) that it had "misinterpreted" DoD
Instruction 6000.13, "Medical Manpower and Personnel" (June 30, 1997) when it
originally calculated petitioner's GME ADSO is false, misleading, and contrary to
law.

35.    The Army did not misinterpret this post-1988 instruction. Instead, it
attempted to retroactively apply the instruction, for the first time, to an officer who
signed an HPSP contract before April 8, 1988. To their credit, Major Owens and Mr.
Rash admitted as much.

11

36. In any event, it is clear from the plain language of the GME contracts, the applicable directive and longstanding custom and practice that the Army's original ADSO calculations in petitioner's GME contracts are correct.

37. The GME contracts are comprised of two documents: (1) the standard GME training agreement and (2) the "Adjusted Active Duty Service Obligation" memorandum. Both require the officer's signature to acknowledge acceptance of the contract and the resulting service obligation.

38. The GME agreements at issue are template forms with fill-in-the-blanks for the different types of military and civilian based GME programs. Paragraph 7 of the agreements expressly provide that participation in GME training will result in an ADSO and explains that there are two sets of rules for calculating that obligation—*i.e.,* the pre-and post-April 8, 1988 rules. It makes clear that service obligations for officers like petitioner, who signed an HPSP contract before the April 8, 1988, are governed by the rules in effect before that date.

39. The GME agreements, however, do not specify the adjusted service obligation or its expiration date. Exs. 3-4. Instead, the ADSO memorandum, which the Army prepares, fills this material gap by specifying the exact date on which the obligation would expire should the officer accept the training. In other words, the ADSO memorandum customizes this aspect of the agreement to the particular officer's situation. The memorandum is essential to the contract because it provides the otherwise unstated material term by which both parties measure their

respective cost and benefit of the bargain. Without the ADSO memorandum, there would be no meeting of the minds.

40.    Because petitioner signed his HPSP contract in 1986, his GME service obligation should be—and in fact was—calculated under ¶ 7*a* and the 1981 version of DoD Directive 6000.2. The applicable rules for calculating his ADSO are as follows:

    a.    For first term officers, time spent in DoD sponsored GME in a military facility does not increase the minimum term of service required. Ex. 1 at ¶ 5.

    b.    For non-obligated officers, time spent in DoD sponsored GME programs, both civilian and military based, result in additional service obligations. *Id.* at ¶¶ 5 & 14b. The service obligation for GME in a military and civilian facility, respectively, are calculated as follows:

        (1)    "Unless already obligated, a participant shall incur an ADO equal to the amount, up to 2 years total, such that the participant is obligated for a period of 2 years at the conclusion or termination of the GPE. *See* Directive 6000.2 (March 19, 1981) at Encl. 2, ¶ 3*a*.

        (2)    "A member subsidized by the Department of Defense during training in a civilian facility shall incur an ADO of 1 year for each such year or portion thereof. Unless already obligated, the minimum ADO that a participant shall incur for any period of GPE is equal to the amount, between 1 and 2 years total, such that the participant is obligated for a minimum period of 2 years at the conclusion or termination of said GPE. *Id.* at ¶ 3*b*.

41.    In accordance with those rules, petitioner incurred a two-year service obligation for his cardiology GME at WRAMC. While it was a three-year program,

the directive's "up to 2 years total" clause imposes a two-year cap on his ADSO. *See* Directive 6000.2 (March 19, 1981) at Encl. 2, ¶ 3*a*.

42.    Petitioner incurred an additional one-year service obligation for his one-year GME at Johns Hopkins. Since he was "already obligated" to a two-year GME ADSO, the directive's "minimum period of 2 years" clause does not apply to him. The Army's custom and practice—for those who entered HPSP contracts before April 8, 1988—has been to permit concurrent payback of these GME service obligations. This was confirmed by Mr. Rash on March 13, 2006. Running concurrently, petitioner's two GME ADSOs expire on June 30, 2007—two years after the date he completed his GME training.

43.    Therefore, the ADSO expiration date that appears in bold letters in petitioner's GME contract is the result of a correct application of ¶ 7*a* and the pre-1988 rules.

44.    Major Owens and Mr. Rash confirmed this.

45.    They further confirmed that, until this case, the Army had never applied the April 8, 1988 directive, or subsequent iterations, to calculate GME service obligations for officers who signed pre-1988 HPSP contracts.

46.    In any event, the Army cannot rely on a revised or new directive to alter ADSOs previously agreed to by the parties.

47.    The Army's effort to retroactively *and* selectively apply new GME rules to petitioner, despite his pre-1988 HPSP contract, is arbitrary and capricious, an abuse of discretion, and contrary to law.

14

48.    The Army is treating like cases differently without any rational basis or justification.

49.    It has also effectively changed pre-existing policy without a reasoned explanation for the change of course.

50.    For the past 25 years, the Army has applied ¶ 7*a* and the 1981 version of DoD Directive 6000.2 to calculate GME obligations for officers who, like petitioner, signed HPSP contracts before April 8, 1988. Indeed, shortly after the 1988 version of the directive was issued, the Army asked DoD whether it could retroactively change the terms of a service agreement based on a revised directive. Assistant General Counsel Robert L. Gilliat correctly concluded that it could not. Ex. 6. In particular, he found that: (1) "a contract binding on the AFHPSP student is also binding on the Military Department, the other party to the contract"; (2) "[m]odification of the directive does not provide a sufficient legal basis to alter active duty obligations previously agreed to by the parties to the contracts"; (3) "service contracts would be meaningless if one party to them was free to alter material terms"; and (4) a "directive change. . .should not be relied upon as a legal basis to alter any active duty obligations which had been incorporated into the AFHPSP contracts prior to the date of the change." *Id.* The Army correctly followed this advice for the past two decades. Its sudden and unexplained departure from this policy and practice is arbitrary and capricious.

51.    Major Owens and Mr. Rash confirmed that the Army consistently applied the pre-1988 rules to officers who signed HPSP contracts during that era.

15

They further confirmed that the Army has never before applied the April 8, 1988 rules or subsequent iterations to calculate a GME ADSO for a pre-1988 HPSP officer. Major Owens stated:

> Prior to [petitioner's] case, all GME ADSO's have been calculated according to pre-1988 rules when the HPSP contract was signed before the new rules went into effect in 1988. . . [He is] the only pre-1988 officer to have [his] ADSO retroactively recalculated using the new rules.

52.    Similarly, Mr. Rash stated "there was no calculation error made previously, but rather a change in which rules were applied, which has never been done before." Petitioner is "the only officer to whom this is being done."

53.    There is no question that the Army can change its rules and issue new instructions, but it cannot retroactively apply such rules to change material terms of a pre-existing contract. That, however, is precisely what the Army has attempted here, but only with respect to petitioner. It has singled him out and treated him differently than all the other similarly situated pre-1988 HPSP contract holders.

54.    On May 3, 2006, petitioner objected to the Army's effort to modify his GME contract and thereby extend his ADSO from June 30, 2007 to June 30, 2010. He asked the Army to confirm that his ADSO expires on June 30, 2007, as his GME contract expressly provides. While he expressed his desire to avoid litigation, he explained that he would have no choice but to pursue judicial relief if he did not receive confirmation from the Army within ten business days from the date of his letter.

16

55.    On May 4, 2006, the Army confirmed receipt of his letter, but it has yet to respond to its substance.

## Cause of Action

56.    Petitioner realleges and incorporates by reference ¶¶ 1-55 above as if fully stated herein.

57.    A case of actual controversy within the jurisdiction of this Court exists as to whether petitioner's ADSO expires on June 30, 2007.

58.    The June 15, 2004 GME service agreement between the parties expressly provides that petitioner's ADSO expires on June 30, 2007. The Army's effort to modify this agreement and thereby extend his obligation is unlawful for at least three reasons: (a) it attempts modify a material term of a contract without mutual assent and consideration; (b) it is contrary to the plain language of the contracts and the applicable directive; and (c) it departs from longstanding policy and practice and treats similarly situated individuals differently, without a reasoned explanation for doing so.

## Prayer

WHEREFORE petitioner respectfully requests that the Court—

(a)        direct respondent and defendant, in accordance with 28 U.S.C. § 2243, to show cause within the period prescribed by law why the writ should not be granted;

17

(b)      grant a writ of habeas corpus ordering respondent to discharge him

on or before June 30, 2007 from the United States Army in

accordance with his active duty service agreements; and

(c)      declare that his ADSO expires on June 30, 2007;

(d)      direct defendant to remove from petitioner's record all reference to

the purported extension of his ADSO from June 30, 2007 to June

30, 2010;

(e)      award him costs and reasonable attorney fees in accordance with

the Equal Access to Justice Act; and

(f)      grant such other and further relief as may, in the circumstances, be

just and proper.

Respectfully submitted,

Eugene R. Fidell (112003)
Matthew S. Freedus (475887)
Feldesman Tucker Leifer Fidell LLP
2001 L Street, N.W.
Second Floor
Washington, D.C. 20036
(202) 466-8960

*Attorneys for Petitioner*

June 7, 2006

*Serve:*

Hon. Kenneth L. Wainstein, United States Attorney for the District of
  Columbia (attn: Civil Process Clerk)
Hon. Alberto R. Gonzales, Attorney General of the United States
Hon. Francis J. Harvey, Secretary of the Army
Major General Kenneth L. Farmer Jr.

With the Multi-National Force in Iraq )
                                      )    *ss.:*
                                      )

## Verification

I declare under penalty of perjury under the law of the United States of America that I am the person for whose relief the foregoing Application for a Writ of Habeas Corpus is intended and that the facts set forth therein are true and correct. Executed on June 7, 2006.

Daniel W. Isenbarger

# Exhibit 1

# SERVICE AGREEMENT
## DEPARTMENT OF THE ARMY ARMED FORCES HEALTH PROFESSIONS SCHOLARSHIP PROGRAM
For use of this form, see AR 601-141; the proponent agency is the Office of The Surgeon General.

*THIS FORM IS AFFECTED BY THE PRIVACY ACT OF 1974*

1. **AUTHORITY:** 10 USC 2122.

2. **PRINCIPAL PURPOSE(S):** Service Agreement is used as the contract between the US Army and student selected to enter the scholarship program. Program offers financial support in return for an active duty obligation.

3. **ROUTINE USES:** A signed and witnessed Service Agreement, which includes the student's SSN, must be submitted by selectees to enter the program. Student certifies to specific eligibility statements and that he/she agrees to and/or understands requirements and active duty obligation. SSN is used for identification purposes.

The signed and witnessed Service Agreement becomes a part of member's official file at RCPAC. Other distribution includes: Fitzsimons Army Medical Center in conjunction with the payment of stipend and educational expenses; AMEDD Personnel Counselor; and HQ USAMEDDPERSA (SGPE-PD) for student management file.

4. **MANDATORY OR VOLUNTARY DISCLOSURE:** Voluntary. If not submitted with other appointment and program entry documents, appointment in the USAR will not be processed.

| NAME OF APPLICANT (Print or type) | SSN |
|---|---|
| Daniel Wayne Isenbarger | 546 82 0768 |

In accordance with my application to participate in the Armed Forces Health Professions Scholarship Program (Chapter 105, Title 10, United States Code),

1. I hereby certify that:

    a. I am a citizen of the United States of America.

    b. I have been accepted for admission to or am enrolled in an accredited college, university, or institution located in the United States or Puerto Rico in a course of study in medicine or other health profession, leading to a degree in _medicine_

    c. I am not obligated for future service to any health institution or community by virtue of any scholarship, grant, contract, or other agreement, and I will not make any such contract or other agreement without approval of The Surgeon General of the Army until I have completed my service obligation under this Program.

2. As a member of the Program, I agree that, unless sooner separated, I will remain in the Program to complete the educational phase leading to a professional degree in my course of study. I specifically acknowledge that I may not unilaterally terminate my participation in the program by refusing to apply for or to accept the monetary or other benefits of the program set forth elsewhere in this agreement.

3. I agree to pursue my studies and training on a continuous basis during the school years set forth in the schedules of the institution in which I am enrolled, or in which I will matriculate, and to the best of my ability, direct my efforts toward completion of course requirements prerequisite to my receiving the designated degree in the health profession for which I was selected for a scholarship.

4. I understand that I will not be granted an extension of this scholarship for the purpose of pursuing studies toward completion of course requirements prerequisite to receiving any other degree.

5. If qualifying for a degree in medicine or osteopathy, I will apply in accordance with applicable Army directives for the next Army First Year Graduate Medical Education (FYGME) Program scheduled to commence after receipt of such degree and participate, if selected by the Army, in an active duty status. I understand that medical and osteopathic graduates not selected for an Army FYGME Program will participate in an inactive duty status in an American Medical Association (AMA) or American Osteopathic Association (AOA)-approved first year graduate medical education program (internship) offered by a nonmilitary hospital. Following completion of the Army FYGME program or approved first year graduate medical education program (internship), I understand I will be required to perform professional duties, consistent with Army requirements, as determined by The Surgeon General, unless I am selected for further residency training. If elected for further training by the Army, I understand such residency training may be in an Army hospital on an active duty status or in a nonmilitary hospital in an inactive duty status.

6. If I desire residency training, I will apply for an Army residency program, unless previously selected by The Surgeon General for delay of entry on active duty to complete a civilian residency. Residency program participation in an Army hospital is in an active duty status. Those selected by The Surgeon General for civilian-based training in a particular residency, under Army sponsorship, will, in addition to any other active duty obligation, incur an active duty obligation of one year for each such year or portion thereof of graduate professional education (GPE). Program members will not be released from active duty for a minimum period of two (2) years following completion of any period of GPE except in the best interest of the Government.

7. I understand that selections for residency training in a nonmilitary hospital are made by the Army from among the applicants requesting training in a given specialty, and that the number approved for such training is determined by the Army's projected requirements for specialists qualified in each specialty. If selected by the Army for civilian specialty training, I understand that deferment from active duty or transfer to inactive duty status will be for the purpose of performing the requested residency and for the period of time usually required to complete training in that specialty. I understand that, upon completion of a civilian residency, I will be ordered to active duty. I understand that any proposed changes or deviation in the training or time requirements to complete my residency are subject to the approval of The Surgeon General. I further understand that, should such civilian residency training be completed or terminated prior to the date approved for deferment from or return to active duty, I am obligated to immediately advise The Surgeon General so that I may be ordered to active duty to fulfill my scholarship obligation.

8. If training under paragraphs 5, 6, or 7 is accomplished in a nonmilitary program, I understand that I will be in an inactive duty status. I will not be entitled to any pay, allowances, or education expenses from the Army, but I will be entitled to accept the normal stipends and benefits paid to other trainees in my training institution.

DA FORM 4629 APR 82    REPLACES EDITION OF 1 FEB 80, WHICH IS OBSOLETE

9. I understand that I must accept an appropriate reappointment or designation as to grade and branch within the Army, if tendered, based upon my health profession, following satisfactory completion of the Program. Further, that such reappointment may result in a lower grade than previously held as a commissioned officer prior to and during my participation in this Program.

10. I agree to participate in designated military training while I am in the Program.

11. I agree to complete the requirements for appointment as a commissioned officer. I agree to meet the Army Appearance Standards as established by policy and regulation.

12. I understand that I will not be permitted to voluntarily withdraw from the Program.

13. As a result of Program participation, I understand that I will:

a. Incur an active duty obligation (ADO) of two years for the first two years, or portion thereof, that I have been in the Program. Participation for periods in excess of two years will result in an additional active duty obligation of ½ year for each additional ½ year or portion thereof of participation. Under no condition will I be released from active duty until I have served a minimum of two years following completion of any period of graduate professional education, except when my release is determined by the Army to be in the best interest of the Government.

b. Unless otherwise relieved, serve, apart from my active duty obligation (ADO) described in 13a, above, a minimum term of service on active duty of three years. My minimum term of service will run concurrently with my active duty obligation (ADO); however, if my ADO is less than my minimum term of service, I will not be released from active duty until I have also served my minimum term of service. Any time spent on active duty after completion of the basic professional degree required for appointment to the health services category to which assigned (including time spent in graduate professional education and in discharging an ADO) will count toward the satisfaction of this minimum term. Prior active duty service will not count toward the completion of this requirement.

c. I further understand that any subsequent changes in my marital or dependent status or in my physical condition will not be grounds for subsequent release from the terms of this contract unless specifically provided for by statute or applicable Army Regulations in effect at the time my status changes.

14. I understand that the following provisions apply to the discharge of my active duty obligation:

a. Time spent in graduate professional education (FYGME/internships; residencies or fellowships) will not be creditable toward satisfying my Program obligation.

b. An obligation incurred as a Program member is in addition to any obligation incurred as a result of participation in any other military program. I may not serve all or any part of the ADO incurred by participation in this program concurrently with any other military obligation.

c. An assertion of community essentiality will not be considered as a ground for relief from the Program obligation or for delay in fulfilling the Program obligation.

d. Time spent on active duty or active duty for training while a member of the Program prior to completion of professional degree requirements will not be credited toward fulfillment of any active duty obligation.

15. As a Program member, I understand that I will:

a. Be commissioned as an officer in a Reserve Component of the Army and serve on active duty for training in the pay grade 01 (2LT), with full pay and allowances of that grade, for a period of 45 days during each 12-month period of Program participation. This active duty for training may be at the accredited civilian institution I am attending, if to be detailed elsewhere would interrupt my academic training, as verified by a school official responsible for the academic program as a degree-qualifying requirement in my course of study and approved by HQ USAMEDDPERSA (SGPE-PD). In addition, I will be required to participate in such other military and professional training as is prescribed by the Army.

b. Except when serving on active duty for training, pursuant to para 15a above, receive a stipend at the rate established by law. I understand that payment of such stipend commences on the date that all of the following conditions are satisfied: My oath of office has been executed, this service agreement has been executed, and enrollment in my course of study has been accomplished. Such stipend will be suspended upon my graduation or upon the date of completion of the regular course of studies if that date precedes the date of my graduation by over 45 days or upon my failure to maintain the status of a full-time student at my school. Federal income tax liability with respect to Program entitlements is determined by statute and/or rules and regulations of the Commissioner of Internal Revenue.

c. Be entitled to receive payment for all actually incurred and approved educational expenses which are supported by purchase receipts and certified as essential to the course of study by a school official designated by the institution. These include tuition, fees, books, laboratory expenses, laboratory and clinical costs, precious and semiprecious metals, payments for educational services, and rental of nonexpendable equipment (such as a microscope for which the cost of rental is limited to $250.00 per year for two years), but exclude room and board and non-academic expenses such as yearbooks, school newspapers, parking fees, and tickets for sports activities. Such payments will be limited to those educational expenses normally incurred by students in my school and in my degree program who are not members of the Program. In no case will the Army reimburse an individual for the purchase of nonexpendable equipment (individual items costing $200.00 or more). If I enter the Program during an academic session, I am eligible for personal reimbursements on a prorated basis of all normally required and authorized items specified above, provided they are applicable to the current academic year. Those expenses incurred and items purchased prior to the current academic year, but still in use or required to be used in the future, are not approved for reimbursement. I understand that the Government will not be responsible for any acts of negligence on my part, and that no duplicate payments will be made for loss or breakage of any supplies furnished hereunder.

16. I further understand and agree that service performed while I am a member of this Program will not be counted:

a. In determining eligibility for retirement other than by reason of a physical disability incurred while on active duty as a member of the Program; or

b. In computing years of service, creditable for pay under title 37, United States Code, section 205.

17. I understand that if my status as a student is suspended or discontinued for deficiency in conduct or studies, or for other reasons, I will be required to perform active duty in an appropriate military capacity in accordance with the active duty obligation incurred, when such service is determined to be in the best interest of the Government.

18. I understand and agree to reimburse the Government for all stipend payments, tuition, and other educational costs which it incurred, or any portion thereof, as determined by the Secretary of the Army, if I fail to complete my obligation under this contract as a result of action not initiated by the Government. However, I may not be relieved of my active duty obligation arising from participation in the Program solely because of willingness and ability to refund all payments made by the United States Government pursuant to sections 2121 and 2127, title 10, United States Code.

19. I understand that all financial inducements and benefits, including, but not limited to, basic pay, housing allowances, health care benefits, bonuses, professional pay, variable incentive pay, special pay, commissary privileges, retirement benefits, annual leave, and other benefits are either statutory or regulatory and are subject to change at any time without notice and any subsequent loss of such financial inducements or benefits by virtue of a statutory, regulatory or policy change shall not release me from any obligations incurred under this contract.

20. I understand that my remaining service obligation of ___0___ years ___0___ months ___0___ days will be added to any obligation incurred as a participant in the US Army Health Professions Scholarship Program.

21. I understand that this is the entire contract between myself and the United States Army and that there are no oral or other agreements or understandings or representations affecting the contract or relating to my military service, except as otherwise specifically provided herein.

15 July '86
**Date**

Daniel Wayne Isenbarger
**Name of Applicant (Type or Print)**

*Daniel Isenbarger*
**Signature**

Paul Isenbarger
**Name of Witness (Type or Print)**

*Paul Isenbarger*
**Signature of Witness**

Accepted for and on behalf of the United States of America

*Wessie C. Rogers*

WESSIE C. ROGERS
CPT, MSC
Chief, Stu Prog Mgmt Acty
Officer Procurement Division

# Exhibit 2



**DEPARTMENT OF THE ARMY**
OFFICE OF THE SURGEON GENERAL
5109 LEESBURG PIKE
FALLS CHURCH, VA 22041-3258

REPLY TO
ATTENTION OF

January 6, 1996

Graduate Medical Education Division

Captain Daniel W. Isenbarger, Medical Corps
William Beaumont Army Medical Center
El Paso, Texas  79920-5001

Dear Doctor Isenbarger:

I am pleased to inform you that you have been selected for Army residency/fellowship training.  It should be understood that this selection is contingent on your maintaining an acceptable level of performance, compliance with the height and weight standards of Army Regulation 600-9 and successful completion of the Army Physical Fitness Test.  It should be further understood that if this headquarters is informed of a decline in your level of performance, after receipt of this notification of selection, and this is supported by appropriate written documentation, a re-look board may be convened to reconsider your selection for GME training.

Your program will begin on or about July 1, 1996 and extend until successful completion of the program, your earlier withdrawal, or termination. Completion of the program is usually determined by the minimum training requirements of the American medical specialty board in your field.

The obligation you incur for participation in this training is specified on the enclosed training agreement.  Any questions regarding obligations may be directed to the Commander, U.S. Total Army Personnel Command, ATTN: TAPC-OPH-PS, 200 Stovall Street, Alexandria, Virginia 22332-0417.  The telephone number is DSN 221-2370/2371 or commercial (703) 325-2370/2371.

Please indicate your acceptance or rejection of this training on the enclosed agreement and return the original signed copy of the agreement to this office in the enclosed envelope no later than     JAN 3 1 1996

It is imperative that you provide two copies of this letter and the signed agreement to your unit personnel officer.  It is incumbent on you to ensure that your personnel officer forwards one copy of each to your servicing finance and accounting officer and posts one copy of each to your Military Personnel Records Jacket (DA Form 201).  The signed agreement is authority to extend your current active duty term of service to the date specified in that agreement in accordance with paragraph 17k, AR 135-215.  <u>Failure to do this will result in cessation of your full pay and allowances at your current expiration of term of service (ETS) date</u>.

Sincerely,

Eric B. Schoomaker
Colonel, Medical Corps
Director, Medical Education

Printed on Recycled Paper

Enclosures



**DEPARTMENT OF THE ARMY**
OFFICE OF THE SURGEON GENERAL
5109 LEESBURG PIKE
FALLS CHURCH, VA 22041-3258



REPLY TO
ATTENTION OF

SUBJECT:  Training Agreement for Army Graduate Professional Education (GPE) in a Military Facility

Commander
USAHPSA, ATTN: MCHO-ME-GME
Falls Church, VA 22041-3258

1.  I have received your letter notifying me of my selection for Graduate Professional Education (GPE) training in Infectious Disease at Brooke Army Medical Center, Fort Sam Houston, Texas beginning on or about July 1, 1996.

2.  I further understand that my selection is contingent upon my maintaining an acceptable level of performance, compliance with the height and weight standards of Army Regulation 600-9, and successful completion of the Army Physical Fitness Test.  I understand that should my level of performance decline and appropriate written notification of this is received by this headquarters, prior to the start date of my training, a re-look board may be convened to reconsider my selection for GME training.

3.  I further understand that continuation of my training will be subject to my satisfactory performance of duty as determined by the Hospital Education Committee.

4.  I understand that no portion of an existing active duty obligation (ADO) may be satisfied during participation in this GPE program except as specifically provided by my earlier agreement executed upon entry into the AFHPSP, or the AR 601-112 Program, to wit:  No Modification.

5.  I understand that notwithstanding any provision that may appear in Army regulations, under the current Department of Defense Directive 6000.2, dated 8 April 1988, as a participant in GPE in a military facility I will incur an ADO as follows:

     a.  If I entered into an AFHPSP contract prior to 8 April 1988 and such contract specified an ADO for GPE in a military facility, my ADO will be governed by such provision.

     b.  If I do not meet the criteria in paragraph 4.a., above, my ADO will be one-half year for each one-half year of training, or portion thereof, but the minimum ADO shall not be less than two (2) years.

This obligation for training in a military facility can be paid back concurrently with any other obligation that I may already have except another GPE obligation.

6.  I understand that my current ADO expires on June 30, 1998.  By acceptance of this GPE training, I agree that my ADO, upon successful completion of this GPE training will terminate on June 30, 2001.  This new ADO expiration date is based on successful completion of the GPE training on the scheduled date of June 30, 1999.  If for any reason I do not successfully complete this GPE training, or do not successfully complete the program until after the currently scheduled completion date, my ADO will resume effective the date of withdrawal or termination from the training or date of successful completion of the program and the above new ADO expiration date will be adjusted accordingly, based on the amount of time I actually spent in the training program.

7.  I understand that this GPE training constitutes a voluntary retention program and that unless a waiver is obtained, I will not be released from active duty before satisfying all my active duty service obligations, even if those obligations extend me beyond 20 years active federal service.

Printed on ✪ Recycled Paper

8.  I agree that if I am twice non-selected for promotion I will remain on active duty until such time as I have fulfilled the term of continuous active duty agreed to in paragraph 5 above, even if that obligation will extend me beyond what would otherwise be the date of my release from active duty as a result of non-selection for promotion.  I agree to accept selective continuation on active duty, if offered, rather than elect to be discharged as a result of being twice non-selected for promotion.  I understand that if I am not a Regular Army officer, the Secretary of the Army or his delegate may continue me on active duty until I have served the term of continuous active duty agreed to in paragraph 5 above.  If I am a Regular Army officer and am twice non-selected for promotion, I waive any right I may have to decline continuation on active duty.

9.  I understand that I will not be released from active duty prior to my ADO incurred as stated in paragraph 5 except in the best interest of the U.S. Government.

I accept  (    )
            this training
I decline (X )

DATE  17  JAN  '96

SIGNATURE _____
            Isenberger, Daniel W.
            Captain, Medical Corps, 546820768

OTSG FL 18          Previous editions of this form are obsolete.
Dec 95

# Exhibit 3



**DEPARTMENT OF THE ARMY**
OFFICE OF THE SURGEON GENERAL
.... LEESBURG PIKE
FALLS CHURCH VA 22041-3258



**REPLY TO**

SUBJECT: Training Agreement for Army Graduate Medical ~~.....~~

Department of the Army
HQDA, OTSG, ATTN: DASG-PSZ-MG
5109 Leesburg Pike
Skyline Six, RM 596
Falls Church, VA 22041-3258

1. I acknowledge receipt of your letter notifying me of my selection for Graduate Medical Education (GME) as indicated below:

_____X_____ a. For GME training in a military facility in Cardiology at NCC-Walter Reed Army Medical Center, Washington, DC, beginning on or about July 1, 2001 and scheduled to be completed on June 30, 2004.

_____ b. For Army sponsored civilian training under the partially-funded GME program in _____ at the _____ beginning on or about _____ and scheduled to be completed on _____. I understand that no tuition is paid for partially-funded civilian GME.

_____ c. For Army sponsored civilian training under the fully-funded GME program in _____ at the _____ beginning on or about _____ and scheduled to be completed on _____. I understand that training is degree-producing and that Army funding for tuition expenses, if applicable, will be provided to the training institution.

_____ d. For Army sponsored civilian training under the fully-funded GME program in which the first year of training is conducted in a civilian institution and the remaining years of training are conducted at a military facility in _____ as follows: Civilian Institution MPH (1st year); _____, _____, (2nd and 3rd year); beginning on or about _____ and scheduled to be completed on _____. I understand that the first year of this program is degree-producing and required for completion of my GME program and that Army funding for tuition expenses during the first year of training will be provided to the training institution.

2. If selected for a five-year GME program at a military facility in general surgery, orthopaedics, or urology (which includes a research year), I agree to assignment or reassignment as directed for the research year. I understand that my research period will not exceed one year in duration and will be completed at my GME training facility or in close proximity to my GME training facility. Any assignment or reassignment required for the research year will not require a funded permanent change of duty station. I further understand and agree to the following:

    a. I will remain a student in training during the five-year program and incur an active duty service obligation (ADSO) for the entire period of training.

    b. Time spent during the one-year research period does not count toward repayment of the ADSO incurred for GME.

    c. I will not be entitled to Medical Additional Specialty Pay (MASP) during the entire research period.

    d. Upon completion of the research period, I will be immediately returned to my specialty program at my training facility.

3. I understand that my selection for entry into GME training is contingent upon my maintaining an acceptable level of duty performance, compliance with the height and weight standards of Army Regulation 600-9, and successful completion of the Army Physical Fitness Test. I further understand that should my level of performance decline and appropriate written notification of this is received by this headquarters, prior to the start date of my training, a re-look board may be convened to reconsider my selection for GME training. I further understand that as a condition of employment for continuation in GME training I must comply with the Army's standards for height and weight and for passing the Army Physical Fitness Test as set forth in regulatory and policy guidance. I further understand and specifically acknowledge my participation in GME training will automatically be terminated

1

Printed on ⬦ Recycled Paper

and that I will not be allowed advancement to the next year if I fail to comply with the Army height/weight standards or fail to successfully complete the Army Physical Fitness Test or if I am placed on a substantiated suspension of favorable personnel actions in accordance with AR 600-8-2 (Suspension of Favorable Personnel Actions).

4. I further understand that continuation of my training will be subject to my satisfactory performance of duty as determined by the appropriate military or civilian educational institution or the U.S. Army.

5. I understand and specifically acknowledge that as a condition of employment and for continuation in GME training I must obtain a current unrestricted medical license and if I fail to obtain such license subsequent to my selection for training I will not be granted entry into GME training and this agreement is automatically void.

6. If performing Army sponsored partially-funded or fully-funded training in a civilian institution, I understand that my duties as a member of the GME training program constitute my official duties as an officer in the U.S. Army and, in that capacity, I am not allowed to accept any compensation for those duties other than my military pay and allowances. I further understand that under the provisions of the training agreement between the United States and the institution involved, professional liability coverage for negligent or wrongful acts made by me while I am acting within the scope of my duties during this training will be provided either by the training institution or under Section 1089, Title 10, U.S. Code (90 Stat. 1985).

7. I understand that notwithstanding any provision that may appear in Army regulations, under the current Department of Defense Directives governing military service obligations, as a GME participant I will incur an ADSO as follows:

   a. If I entered into an Armed Forces Health Professions Scholarship Program (AFHPSP) contract prior to 8 April 1988 and such contract specified an ADSO for GME in a military facility, my ADSO will be governed by such provision.

   b. If I do not meet the criteria in paragraph 7a above, my ADSO will be one-half year for each one-half year of training, or portion thereof, but the minimum ADSO shall not be less than two (2) years. If performing GME in a military facility, this ADSO can be repaid concurrently with any other military service obligation that I may already have except any additional GME ADSO.

   c. If performing Army sponsored partially-funded or fully-funded training in a civilian facility, the ADSO referred to in paragraph 7a and 7b above is in addition to any other ADO I may have already incurred and it cannot be repaid concurrently with other ADSOs which I have incurred as a result of government-funded education and training.

   d. I understand that no portion of an existing ADSO may be satisfied during participation in any GME program unless specifically provided under paragraph 7a above.

   e. I further understand that my final separation date and any ADSO incurred under paragraph 7a through 7d above will be as determined by the Total Army Personnel Command.

8. If I do not successfully complete this GME training, my ADSO will resume effective the date of withdrawal or termination from the training. If I do not successfully complete this GME training until after the currently scheduled completion date, my ADSO will resume effective the date of successful completion of training. In either case, the ADSO will be adjusted based on the amount of time I actually spent in the training program.

9. I understand that this GME training constitutes a voluntary retention program and that unless a waiver is obtained, I will not be released from active duty before satisfying all my active duty service obligations, even if these obligations extend me beyond 20 years active federal service.

10. I understand and specifically acknowledge that if I am once non-selected for promotion I will be ineligible for GME training and will be terminated from such training, effective on the date of the release of promotion board results indicating my non-selection for promotion. I agree that if I am twice non-selected for promotion following completion of GME training I will remain on active duty until such time as I have fulfilled the term of continuous active duty agreed to in paragraph 7 above, even if that

2

ADSO will extend me beyond what would otherwise be the date of my release from active duty as a result of non-selection for promotion. I agree to accept selective continuation on active duty, if offered, rather than elect to be discharged as a result of being twice non-selected for promotion.. I understand that if I am not a Regular Army officer, the Secretary of the Army or his delegate may continue me on active duty until I have served the term of continuous active duty agreed to in paragraph 7 above. If I am a Regular Army officer and am twice non-selected for promotion, I waive any right I may have to decline continuation on active duty. .

11. I understand that I will not be released from active duty prior to fulfilling the ADSO incurred for this GME training in accordance with applicable directives governing GME obligation except in the best interest of the U.S. Government. I further understand and specifically acknowledge that if terminated from GME training for any reason, I will be required to reapply for such training in accordance with Army requirements.

12. If participating in an Army sponsored fully-funded GME training program, I understand that in the event I voluntarily (which ........ separation as a conscientious objector) or as a result of misconduct (including separation for homosexuality, drug abuse, .. alcohol abuse) fail to complete the required service obligation, I will reimburse the United States the costs of advanced .......... ....... ... tuition, books, supplies, and other costs clearly identified as paid by the United States, but ........... ... include pay, allowances, or travel expenses. I acknowledge that the term "fail to complete" means I served ..... .. ......... ...... ........ ...... ...... ...... ...... ...... serve on active duty at all because such service was not in the best interest ....... ..... . I understand that this reimbursement provision does not give me the option to choose to reimburse the United States in ..... .......... ...... ...... ...... ...... .......... ...... supplies. The reimbursement amount shall be determined in accordance ..... ... following formula. Amount to be reimbursed=

| Costs of Advanced Education | X | Unserved Portion of Active Duty Obligation |
| | | Total Fully Funded Long Term Civilian Training |
| | | Program Active Duty Obligation |

13. (X) I accept the selected training and understand the requirements indicated herein. I understand that any alteration or modification to this acceptance document other than where required renders this document invalid.

14. ( ) I decline the selected training.

SIGNATURE _____

Isenbarger, Daniel W.
MAJ. MC, 546820768

DATE __16 JAN 01__

OTSG FL 18    Previous editions of FL 7 and 18 are obsolete.
Dec 2000

3



**DEPARTMENT OF THE ARMY**
U.S. TOTAL ARMY PERSONNEL COMMAND
ALEXANDRIA VA



TAPC-OPH-PS                                    1 1 JAN 2001

MEMORANDUM FOR, Commander, WALTER REED ARMY INSTITUTE OF RESEACH,
          ATTN:MAJ DANIEL ISENBARGER,
          WASH, DC 20307
          546 - 82 - 0768
SUBJECT:  Adjusted Active Duty Service Obligation

1. Congratulations on your recent selection for Army Graduate Medical Education (GME) residency training in CARDIOLOGY at NCC-WALTER REED ARMY MEDICAL WASHINGTON, DC 20307-5000. Participation in this program incurs an additional active duty service obligation (ADSO).

2. Your training program is scheduled to begin on July 01 2001 and end on June 30 2004. Should you accept this training, your new ADSO upon successful completion, will end on June 30, 2006. This new ADSO calculation was based upon the your current Army GME selection and your previous obligations. If any facet of your selected program changes or you fail to complete the program, your ADSO may require recalculation.

3. Please acknowledge receipt of this correspondence and indicate your acceptance of your adjusted ADSO by initialing in the space provided and return to Commander, U.S. Total Army Personnel Command, ATTN: TAPC-OPH-PS, 200 Stovall Street, Alexandria, VA 22332-0417.

4. Your reply must be received at your career branch before we can issue assignment instructions. Any delay in your response could delay processing of your assignment instructions. Again, congratulations on your selection for Army Graduate Medical Education Training.

5. Should you have any questions regarding your ADSO you can contact Mr. Rash at DSN 221-2372 or commercial (703) 325-2372.

                              LARRY K. HAMMERBACHER
                              COL, GS
                              Chief, Health Services Division

I

  X   I, MAJ DANIEL ISENBARGER acknowledge acceptance of my new additional training obligation and new adjusted ADSO of June 30, 2006.

                                        16 Jan 01
                    Signature/date
                 DANIEL  ISENBARGER
                    Printed name/signature

        Please retain a copy of this document for your records.

# Exhibit 4



**DEPARTMENT OF THE ARMY**
OFFICE OF THE SURGEON GENERAL
5109 LEESBURG PIKE
FALLS CHURCH VA 22041-3258



REPLY TO THE
ATTENTION OF

January 12, 2004

Graduate Medical Education Division

LTC Daniel W. Isenbarger, MC
NCC-Walter Reed Army Medical Center
Washington, DC 20307-5000

Dear Doctor Isenbarger:

Congratulations! You have been selected for Army sponsored civilian graduate medical education (GME) training under the partially funded program in **Interventional Cardiology**. Your training program will begin on or about **July 1, 2004** and extend until successful completion of the program, early withdrawal or termination from training. Completion of the program is usually determined by the minimum training requirements of the American medical specialty board in your selected specialty, if applicable, in your selected specialty.

As a condition of your selection and continuation in GME, you must maintain an acceptable level of performance, comply with military appearance and weight standards, and successfully complete the Army Physical Fitness Test. A decline in your level of performance, after receipt of this selection notification, that is supported by appropriate written documentation may result in a re-look board being convened to reconsider your selection for GME. Failure to meet military appearance/weight and physical fitness standards prior to the start of your training program will automatically invalidate your selection to GME.

You must indicate your acceptance or declination of this training and sign the enclosed training agreement. There may be one or more contingency clauses associated with your GME selection. **If this applies, there is an additional enclosure directly behind the GME training agreement.** This enclosure indicates the exact contingency requirement(s) that you must meet in order for your selection to remain valid. If you accept the training offered, you must also sign the "GME Selection Contingency" enclosure. This document must be returned along with your signed training agreement. **You must comply with the suspense date of April 1, 2004 for meeting the contingency requirement(s). This suspense date is important because orders related to participation in GME will not be issued until the contingency requirement(s) have been met.** If there is no "GME Selection Contingency" enclosure, then a contingency clause does not exist in your selection.

Under the partially funded program, although military pay and allowances are provided, all education expenses are the responsibility of the student. If you have been selected for a specialty program which leads to board certification, it should be understood that training received must be in an institution accredited by the Accreditation Council for Graduate Medical Education of the American Medical Association.

Your signed training agreement and signed contingency document, if applicable, must be submitted to: HQDA, OTSG, ATTN: DASG-PSZ-MG, 5109 Leesburg Pike, Skyline 6, Room 691, Falls Church, VA 22041-3258 no later than **February 6, 2004**. The signed training agreement is authority to extend your current active duty term of service in accordance with paragraph 4-2i, AR-135-215. If you are currently assigned to a medical treatment facility that has a GME office, you are required to follow the instructions issued by that local GME office regarding the return of your documents. You must advise your local GME office when the contingency requirement, if any, has been met so that they can apprise this office. If you are currently assigned to a medical treatment facility that does not have a GME office, you must forward the required documents directly to the aforementioned address. Regardless of your location, it is your responsibility to ensure the Medical Education Directorate, OTSG, receives confirmation once you have met any contingency requirement.

Printed on ♻ Recycled Paper

- 2 -

Also enclosed is a memorandum from the Personnel Services Branch, U. S. Total Army Personnel Command (PERSCOM). This memorandum adjusts your incurred Active Duty Service Obligation (ADSO) based on your acceptance of GME training. If you accept training, you must follow the instructions contained in the PERSCOM memorandum and ensure this particular memorandum is signed and returned to the appropriate Agency specified in the memorandum. Any questions concerning your ADSO must be directed to the point of contact stated in the PERSCOM memorandum.

It is imperative that you provide two copies of the signed GME training agreement and the ADSO memorandum to your unit personnel officer. You must also ensure that your personnel officer forwards one copy of each document to your servicing finance and accounting officer and posts one copy of each document to your Military Personnel Records Jacket (DA Form 201). Failure to accomplish the aforementioned actions will results in cessation of your full pay and allowances at your current date of expiration of term of service.

Sincerely,

Kristen B. Raines
Colonel, Medical Corps
Director, Medical Education

Enclosures




**DEPARTMENT OF THE ARMY**
OFFICE OF THE SURGEON GENERAL
5109 LEESBURG PIKE
FALLS CHURCH VA 22041-3258

REPLY TO THE
ATTENTION OF

SUBJECT: Training Agreement for Army Graduate Medical Education (GME) Isenbarger, Daniel W., MC, LTC, 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)

HQDA, OTSG
ATTN: DASG-PSZ-MG
5109 Leesburg Pike
Skyline 6, Room 691
Falls Church, VA 22041-3258

1.   I acknowledge receipt of your letter notifying me of my selection for Graduate Medical Education (GME) as indicated below:

_____ a.  For GME training in a military facility in _____ at _____, _____, _____, beginning on or about _____ and scheduled to be completed on _____.

_____ b.  For GME training in a military facility in _____ at the _____, followed by training at the _____, beginning on or about _____ and scheduled to be completed on _____.

_____ c.  For Army sponsored civilian training under the partially-funded GME program in _____ at a _____, beginning on or about _____ and scheduled to be completed on _____.   I understand that no tuition is paid for partially-funded civilian GME.

__X__ d.  For Army sponsored civilian training under the partially-funded GME program in Interventional Cardiology at the Johns Hopkins University School of Medicine, Baltimore, MD., beginning on or about July 1, 2004 and scheduled to be completed on June 30, 2005.  I understand that no tuition is paid for partially-funded civilian GME.

_____ e.  For Army sponsored civilian training under the fully-funded GME program in _____ at _____, _____, beginning on or about _____ and scheduled to be completed on _____.   I understand that training is degree-producing and that Army funding for tuition expenses, if applicable, will be provided to the training institution.

_____ f.  For Army sponsored civilian training under the fully-funded GME program in which the first year of training is conducted in a civilian institution and the remaining year(s) of training are conducted at a military facility in _____ as follows: MPH at the _____, followed by training at the _____, beginning on or about _____ and scheduled to be completed on _____.   I understand that the first year of this program is degree-producing and required for completion of my GME program and that Army funding for tuition expenses during the first year of training will be provided to the training institution.

_____ g.  For Army sponsored civilian training under the fully-funded GME program in which the first year of training is conducted in a civilian institution and the 2nd year of training is conducted at a military facility in _____ as follows: MPH at the _____, _____, followed by training at _____, _____; beginning on or about _____ and scheduled to be completed on _____.   I understand that the first year of this program is degree-producing and required for completion of my GME program and that Army funding for tuition expenses during the first year of training will be provided to the training institution.

_____ h.  For two years of _____ GME training at the _____, _____, in which the first year of training will be spent at the Uniformed Services University of the Health Sciences, Bethesda, MD., fulfilling the requirements of obtaining an MPH degree beginning on or about _____ and scheduled to be completed on _____.

i. For Army sponsored civilian training under the fully-funded GME program in _____ at the _____, _____, beginning on or about _____ and scheduled to be completed on _____. I understand that training is degree-producing and that Army funding for tuition expenses, if applicable, will be provided to the training institution.

j. For Army sponsored civilian training under the partially-funded GME program in _____ at the _____, _____ beginning on or about _____ and scheduled to be completed on _____. I understand that no tuition is paid for partially-funded civilian GME.

2. If selected for a five-year GME program at a military facility in general surgery, orthopaedics, or urology (which includes a research year), I agree to assignment or reassignment as directed for the research year. I understand that my research period will not exceed one year in duration and will be completed at my GME training facility or in close proximity to my GME training facility. Any assignment or reassignment required for the research year will not require a funded permanent change of duty station. I further understand and agree to the following:

a. I will remain a student in training during the five-year program and incur an active duty obligation (ADO) for the entire period of training.

b. Time spent during the one-year research period does not count toward repayment of the ADO incurred for GME.

c. I will not be entitled to Medical Additional Specialty Pay (MASP) during the entire research period.

d. Upon completion of the research period, I will be immediately returned to my specialty program at my training facility.

3. I understand that my selection for entry into GME training is contingent upon my maintaining an acceptable level of duty performance. I further understand that should my level of performance decline and appropriate written notification of this is received by this headquarters, prior to the start date of my training, a re-look board may be convened to reconsider my selection for GME training. I further understand and specifically acknowledge that as a condition of employment and for continuation in GME training I must comply with the Army physical fitness and the appearance and weight standards. I understand that documentation of compliance or noncompliance with these standards will be as prescribed in existing regulatory guidance. I understand that termination from GME training does not relieve an individual of the requirement to complete their ADO.

4. I further understand that continuation of my training will be subject to my satisfactory performance of duty as determined by the appropriate military or civilian educational institution or the U.S. Army.

5. I understand and specifically acknowledge that as a condition of employment and for continuation in GME training I must obtain a current unrestricted medical license and if I fail to obtain such license subsequent to my selection for training I will not be granted entry into GME training and this agreement is automatically void.

6. If performing Army sponsored partially-funded or fully-funded training in a civilian institution, I understand that my duties as a member of the GME training program constitute my official duties as an officer in the U.S. Army and, in that capacity, I am not allowed to accept any compensation for those duties other than my military pay and allowances. I further understand that under the provisions of the training agreement between the United States and the institution involved, professional liability coverage for negligent or wrongful acts made by me while I am acting within the scope of my duties during this training will be provided either by the training institution or under Section 1089, Title 10, U.S. Code (90 Stat. 1985).

7. I understand that notwithstanding any provision that may appear in Army regulations, under the current Department of Defense Directives governing military service obligations, as a GME participant I will incur an ADO as follows:

a. If I entered into an Armed Forces Health Professions Scholarship Program (AFHPSP) contract prior to 8 April 1988 and such contract specified an ADO for GME in a military facility, my ADO will be governed by such provision.

b. If I do not meet the criteria in paragraph 7a above, my ADO will be one-half year for each one-half year of training or portion thereof, but the minimum ADO shall not be less than two (2) years. If performing GME in a military facility, this ADO can be repaid concurrently with any other military service obligation that I may already have except any additional GME ADO.

c. If performing Army sponsored partially-funded or fully-funded training in a civilian facility, the ADO referred to in paragraph 7a and 7b above is in addition to any other ADO I may have already incurred and it cannot be repaid concurrently with other ADOs which I have incurred as a result of government-funded education and training.

d. I understand that no portion of an existing ADO may be satisfied during participation in any GME program unless specifically provided under paragraph 7a above.

e. I further understand that my final separation date and any ADO incurred under paragraph 7a through 7d above will be as determined by the U.S. Army Human Resources Command.

8. If I do not successfully complete this GME training, my ADO will resume effective the date of withdrawal or termination from the training. If I do not successfully complete this GME training until after the currently scheduled completion date, my ADO will resume effective the date of successful completion of training. In either case, the ADO will be adjusted based on the amount of time I actually spent in the training program.

9. I understand that this GME training constitutes a voluntary retention program and that unless a waiver is obtained, I will not be released from active duty before satisfying all my active duty service obligations, even if those obligations extend me beyond 20 years active federal service.

10. If I am twice non-selected for promotion, have not yet fulfilled the term of continuous active duty under this agreement, and am offered selective continuation, then I agree to accept selective continuation on active duty, rather than elect to be discharged as a result of being twice non-selected for promotion.

11. I understand that I will not be released from active duty prior to fulfilling the ADO incurred for this GME training in accordance with applicable directives governing GME obligation except in the best interest of the U.S. Government. I further understand and specifically acknowledge that if terminated from GME training for any reason, I will be required to reapply for such training in accordance with Army requirements.

12. If participating in an Army sponsored fully-funded GME training program, I understand that in the event I voluntarily (which includes separation as a conscientious objector) or as a result of misconduct (including separation for homosexuality, drug abuse, or alcohol abuse) fail to complete the required service obligation, I will reimburse the United States the costs of advanced education, which include the cost of tuition, books, supplies, and other costs clearly identified as paid by the United States, but does not include pay, allowances, or travel expenses. I acknowledge that the term "fail to complete" means I served some but not all of the required period on active duty, or I did not serve on active duty at all because such service was not in the best interests of the Army. I understand that this reimbursement provision does not give me the option to choose to reimburse the United States in lieu of active duty service and that the rule in paragraph 6 applies. The reimbursement amount shall be determined in accordance with the following formula: Amount to be Reimbursed=

Costs of Advanced   X   <u>Unserved Portion of Active Duty Obligation</u>
Education                      Total Fully Funded Long Term Civilian Training
                                   Program Active Duty Obligation

13. (X) I accept the selected training and understand the requirements indicated herein. I understand that any alteration or modification to this acceptance document other than where required renders this document invalid.

14. (  ) I decline the selected training.

SIGNATURE _____

Isenbarger, Daniel W.
LTC, MC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

DATE    15 JAN '04

OTSG FL 18    Previous editions of FL 7 and 18 are obsolete.
Dec 2003



**DEPARTMENT OF THE ARMY**
U.S. ARMY HUMAN RESOURCES COMMAND
200 STOVALL STREET
ALEXANDRIA VA 22332-0417

REPLY TO
ATTENTION OF

AHRC-OPH-P                                                           7 JAN 2004

MEMORANDUM FOR LTC DANIEL ISENBARGER, 546820768, NCC-WALTER REED ARMY
MEDICAL CENTER, WASHINGTON, DC 20307-5000

SUBJECT: Adjusted Active Duty Service Obligation

1. Congratulations on your recent selection for Army Graduate Medical Education (GME) residency
training in INTERVENTIONAL CARDIOLOGY at CIVILIAN INSTITUTION. Participation in this
program incurs an additional active duty service obligation (ADSO).

2. Your training program is scheduled to begin on July 1, 2004 and end on June 30, 2005. Should you
accept this training, your new ADSO upon successful completion, will end on June 30, 2007. This new
ADSO calculation was based upon your current Army GME selection and your previous obligations. If
any facet of your selected program changes or you fail to complete the program, your ADSO may
require recalculation.

3. Please acknowledge receipt of this correspondence and indicate your acceptance of your adjusted
ADSO by initialing in the space provided and return to Commander, U.S. Army Human Resources
Command, ATTN: AHRC-OPH-P, 200 Stovall Street, Alexandria, VA 22332-0417.

4. Your reply must be received at your career branch before we can issue assignment instructions. Any
delay in your response could delay processing of your assignment instructions. Again, congratulations
on your selection for Army Graduate Medical Education Training.

5. Should you have any questions regarding your ADSO, you can contact Mr. Rash at DSN
221-2372 or commercial (703) 325-2372.

FELIPE CASSO
COL, GS
Chief, Health Services Division

X  I, LTC DANIEL ISENBARGER, 546820768, acknowledge acceptance of my new additional
training obligation and new adjusted ADSO of June 30, 2007.

Signature/date

DANIEL W. ISENBARGER
Typed or print Name

Please retain a copy of this document for your records.

# Exhibit 5



**DEPARTMENT OF THE ARMY**
U.S. ARMY HUMAN RESOURCES COMMAND
200 STOVALL STREET
ALEXANDRIA VA 22332-0417

REPLY TO
ATTENTION OF

AHRC-OPH-P

MAR 0 9 2006

MEMORANDUM FOR LTC Daniel W. Isenbarger, MC, 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,
Walter Reed Army Medical Center, Washington, DC 20307-5000

SUBJECT: Change to Active Duty Service Obligation for Training

1. A review of your active duty service obligation (ADSO)
for training was conducted by this office. This review
indicated a misintrepretation of DoD instruction, Medical
Manpower and Personnel, June 30, 1997, 6000-13, para
6.6.3.1 and para 6.6.3.2 whereby, your ADSO of 30 June
2007, should actually read 30 June 2010.

2. The review of your record indicates that you have a
three-year obligation for Cardiology residency training,
(1 July 2001-30 June 2004) and a 2 year obligation for
Your Interventional Cardiology fellowship training (1 July
2004-30 June 2005). Although you signed a training
agreement obligating you until 30 June 2007, it is amended
by this notification. If you believe your obligation is
still incorrect, you may submit to the Army Board for
Correction of Military Records (ABCMR) for their
adjudication.

3. Point of contact is Major Owens/ Mr. Rash at DSN 221-
2382/2372 or (703) 325-2382/2372.

TERRY G. OWENS
MAJ, MS
Chief, Personnel Services
Branch

# Exhibit 6



DEPARTMENT OF DEFENSE
OFFICE OF GENERAL COUNSEL
WASHINGTON, D.C. 20301-1500

October 20, 1988

MEMORANDUM FOR JOSEPH E. SALKO, COLONEL, MSC, USA
          DIRECTOR, MANPOWER, PERSONNEL & TRAINING

SUBJECT:  Obligation of Armed Forces Health Professions
          Scholarship Program (AFHPSP) Students for Graduate
          Medical Education (GME)

     This is in response to your memorandum of September 13, 1988
in which you requested that this office consider the legal
obligations present as a result of the revision of DoDD 6000.2,
"Minimum Terms of Service and Active Duty Obligations for Health
Service Officers," which increased the active duty obligation for
many participants in military sponsored graduate medical
education.  As we understand the controversy, under the previous
directive time spent in DoD sponsored graduate professional
education in a military facility did not increase the minimum
term of service required of first-term personnel.  It is also
noted that both the previous and the revised directive state that
the directive shall not be used to change an ADO or an active
duty agreement entered into in writing by a health services
officer before the effective date of this directive.

     As you have indicated, a problem has now surfaced because
the Military Departments contend that AFHPSP students should be
allowed to abide by the provisions stated in their AFHPSP
contracts entered into prior to the directive change date,
specifically including provisions to the effect that GME in a
military facility will not increase the ADO.  While this office
will not attempt to interpret the applicable terms of each of the
service contracts, we agree that a contract binding on the AFHPSP
student is also binding on the Military Department, the other
party to the contract.  Modification of the directive does not
provide a sufficient legal basis to alter active duty obligations
previously agreed to by the parties to the contracts.  This is
particularly so because of the carryover provision in both
directives alluded to earlier, but even absent that provision the
service contracts would be meaningless if one party to them was
free to alter material terms.

     This office is therefore of the opinion that the directive
change discussed above should not be relied upon as a legal basis
to alter any active duty obligations which had been incorporated

2

into the AFHPSP contracts prior to the date of the change.  In
addition, any AFHPSP contract forms which are at variance with
the current directive should be modified to reflect the new
requirement to increase the active duty obligation for DoD
sponsored graduate medical education.

We can understand your desire to see the results of the
directive change at the earliest possible point in the long
pipeline for medical officer accessions.  Although we cannot
concur in changing agreed upon obligations at the GME stage of
the pipeline, we could concur, if you believe it would be
helpful, in the establishment of a preference for GME for HPSP
participants willing to increase their ADO.  The concept is that
the Services could give a preference for acceptance into a
residency training program (perhaps applying to certain
specialties and/or certain coveted facilities) to any applicant
who agrees to the longer active duty obligation in a new contract.
Those who do not agree to a longer ADO would still be considered
for the GME program.  Because the contracts all state that
residency training is contingent upon being accepted into the
program, a good argument can be made that establishing a
preference system for acceptance does not breach a material term
of the contract.

Robert L. Gilliat
Assistant General Counsel
(Personnel & Health Policy)