UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DANIEL W. ISENBARGER,

    Petitioner,

        v.

KENNETH L. FARMER, JR.,

    Respondent.

Civil Action No. 06-1054 (JDB)

## MEMORANDUM OPINION

    Petitioner, a Lieutenant Colonel in the United States Army, seeks a writ of habeas corpus ordering respondent to discharge him from the United States Army on or before June 30, 2007, and to remove from his record all references to a purported extension of his active duty service obligation ("ADSO") to June 30, 2010. Petitioner contends that the Army unlawfully extended his term of active duty based on retroactive application of a Department of Defense regulation to his contract. In response to an order from this Court to show cause why the writ should not issue, respondent notified the Court that petitioner's ADSO was subject to further review by the Army and has been restored to the original June 30, 2007 date. Respondent accordingly contends that the alleged unlawful extension is not ripe for adjudication and, in the alternative, that the relief requested is not authorized by the habeas statute, 28 U.S.C. § 2241, absent present unlawful custody and exhaustion of administrative remedies.

    The Court concludes that there is no case or controversy at this time as to the lawfulness of petitioner's future custody and, thus, no subject matter jurisdiction over the application for writ of habeas corpus. To the extent that petitioner seeks to remove any remaining references to the incorrect ADSO calculation from his military records, the proper forum is the Army Board for Correction of Military Records ("ABCMR").

## BACKGROUND

Petitioner is assigned as a medical officer in Interventional Cardiology at Walter Reed Army Medical Center in Washington, D.C. and was deployed in Iraq in support of Operation Iraqi Freedom until October 2006. Pet'r's Application for Writ of Habeas Corpus ("Pet.") ¶ 4; Resp't's Response to Order to Show Cause ("Resp't's Br.") at 2. Petitioner currently has an ADSO with the Army until June 30, 2007. Decl. of Major Terry G. Owens ("Owens Decl.") ¶ 3 (Resp't's Br. Ex. 1). The ADSO is based on petitioner's participation in graduate medical education ("GME") at the fellowship level. Resp't's Br. at 2; Owens Decl. ¶ 3.

Petitioner's initial ADSO was incurred pursuant to a Health Professions Scholarship Program contract signed on July 15, 1986. Pet. ¶ 9. Pursuant to the terms of the contract, he committed to a four-year ADSO in exchange for payment of medical school tuition and expenses. Id. and Ex. 1. At that time, the standards governing the duration of petitioner's ADSO were set forth in the 1981 version of Department of Defense Directive 6000.2, "Minimum Terms of Service and Active Duty Obligations for Health Service Officers." Pet. ¶ 10. In 1988, the Department of Defense revised the directive, increasing the ADSO for time spent in military-sponsored GME programs. Id. ¶ 11. The directive provided that it shall not be applied to change an ADSO entered into in writing before April 1, 1988. Id. (citing 1988 Dep't of Defense Directive 6000.2 ¶ G).

In 1991, petitioner graduated from medical school and entered on active duty. Pet. ¶ 14. He later had additional opportunities to receive GME through various fellowship programs, conditioned upon a further ADSO commitment. Id. ¶¶ 16-24. In three separate instances, in 1996, 2001, and 2004, the Army applied the 1981 version of Department of Defense Directive 6000.2 to recalculate the ADSO petitioner would incur in exchange for his participation in

cardiology and interventional cardiology GME fellowship programs. Id. ¶¶ 16, 20, 23. Petitioner agreed to participate in two of these programs, which resulted in extensions of his ADSO according to the 1981 directive. Owens Decl. ¶ 3; Pet. ¶¶ 19, 22. Petitioner signed his most recent training agreement with the Army on January 15, 2004. Pet. ¶ 22 and Ex. 4. In accordance with the terms of that agreement, his ADSO was adjusted to terminate on June 30, 2007. Pet. Ex. 4 ("Should you accept this training, your new ADSO upon successful completion will end on June 30, 2007.").

On January 20, 2006, the U.S. Army Office of the Surgeon General requested that the Chief, Personnel Services Branch, U.S. Army Human Resources Command, "correct" petitioner's ADSO to June 30, 2010. Resp't's Br. at 2; Owens Decl. ¶ 4. The change was based on an interpretation of Department of Defense Directive 6000.2. Pet. ¶ 28; Owens Decl. ¶ 4. In response to the request, petitioner's ADSO was adjusted to read June 30, 2010 in the Total Officer Personnel Management Information System ("TOPMIS") and the Medical Operating Data System ("MODS"). Resp't's Br. at 2; Owens Decl. ¶ 5. Petitioner was notified of the change through a memorandum from Major Terry G. Owens dated March 9, 2006. Pet. ¶ 26. In relevant part, the memorandum stated:

> A review of your active duty service obligation (ADSO) for training was conducted by this office. This review indicated a misrepresentation of DoD instruction, Medical Manpower and Personnel, June 30, 1997, 6000-13, para 6.6.3.1. and para 6.6.3.2 whereby, your ADSO of 30 June 2007, should actually read 30 June 2010. . . .
>
> . . . Although you signed a training agreement obligating you until 30 June 2007, it is amended by this notification. If you believe your obligation is still incorrect, you may submit to the Army Board for Correction of Military Records (ABCMR) for their adjudication.

Pet. Ex. 5.

3

On May 3, 2006 petitioner objected to the Army's effort to extend his ADSO to June 30, 2010.  Pet. ¶ 53.  He then filed this suit a month later, seeking a writ of habeas corpus requiring the Army to discharge him on June 30, 2007 and to remove from his record all references to the extension of his ADSO from June 30, 2007 to June 30, 2010.  Id. ¶ 57.  By declaration dated June 28, 2006, the Army notified the Court and petitioner that, "after further review," the U.S. Army Human Resources Command had decided to return petitioner's ADSO to the original date.  Owens Decl. ¶ 6.  Pursuant to this decision, petitioner's ADSO was returned to June 30, 2007 in the TOPMIS and MODS databases, and thus his ADSO expires on the original date of June 30, 2007.  Id.

## STANDARD OF REVIEW

In response to the order to show cause why the writ should not issue, respondent contends that the Court lacks subject matter jurisdiction over the petition because the claims are not ripe and the jurisdictional prerequisite of unlawful custody is lacking.  Respondent also contends that petitioner has failed to exhaust his administrative remedies.  In effect, then, respondent requests dismissal of the petition, and hence it is appropriate to apply the standards of review applicable to motions to dismiss under Rules 12(b)(1) and 12(b)(6).  See Khalid v. Bush, 355 F. Supp. 2d 311, 317 n.6 (D.D.C. 2005).  "[I]n passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see Leatherman v. Tarrant Cty. Narcotics and Coordination Unit, 507 U.S. 163, 164 (1993); Phillips v. Bureau of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979).  A plaintiff's factual allegations must be presumed true, and plaintiff also must be given every favorable inference that may be drawn from the allegations of fact.  Scheuer, 416 U.S. at 236; Sparrow v. United Air

Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000).  However, a court need not accept as true "a legal conclusion couched as a factual allegation," nor inferences that are unsupported by the facts set out in the complaint.  Trudeau v. Federal Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

Under Rule 12(b)(1), the party seeking to invoke the jurisdiction of a federal court -- petitioner here -- bears the burden of establishing that the court has jurisdiction.  See US Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000); see also Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) (a court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority"); Pitney Bowes, Inc. v. United States Postal Serv., 27 F. Supp. 2d 15, 19 (D.D.C. 1998).  "'[P]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim."  Grand Lodge, 185 F. Supp. 2d at 13-14 (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987)).  Additionally, a court may consider material other than the allegations of the complaint in determining whether it has jurisdiction to hear the case, so long as it still accepts the factual allegations in the complaint as true.  See Jerome Stevens Pharmaceuticals, Inc. v. FDA, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005); EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624-25 n.3 (D.C. Cir. 1997); Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir.1992).

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure will not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Haynesworth v. Miller, 820 F.2d 1245, 1254 (D.C. Cir. 1987).  All that the

Federal Rules of Civil Procedure require of a complaint is that it contain "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 346 (2005) (quoting Conley, 355 U.S. at 47). "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

## ANALYSIS

### I.  Justiciability

Article III of the United States Constitution empowers federal courts to entertain disputes only when they are deemed to be "Cases" or "Controversies." U.S. Const. art. III, § 2. Three interrelated justiciability doctrines – standing, ripeness, and mootness – ensure that federal courts exercise jurisdiction only when the case-or-controversy requirement is met. Nat'l Treasury Employees Union v. United States, 101 F.3d 1423, 1427 (D.C. Cir. 1996) (citing Allen v. Wright, 468 U.S. 737, 750 (1984)). The parties invoke the complementary doctrines of ripeness and mootness to assess the impact that the most recent agency proceedings have on the justiciability of this habeas petition. Respondent contends that the case is not ripe because the challenged extension of petitioner's ADSO was not final in light of that further internal review and any future changes to the ADSO are speculative. Petitioner urges that mootness, not ripeness, provides the proper analytical framework, and under that doctrine respondent's voluntary cessation of unlawful conduct does not deprive the Court of jurisdiction. The Court will examine the justiciability of petitioner's claim under both doctrines.

### A.   Ripeness

Ripeness is a justiciability doctrine designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."[1] Worth v. Jackson, 451 F.3d 854, 861 (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148-49 (1967)).  In evaluating ripeness, a court considers both the fitness of the issue for judicial decision and the hardship to the parties of withholding court consideration. Abbott Labs., 387 U.S. at 149.  Under the first prong, the court considers "whether the issue is purely legal, whether consideration of the issue would benefit from a more concrete setting, and whether the agency's decision is sufficiently final."  Nat'l Ass'n of Home Builders v. U.S. Army Corps of Engineers, 440 F.3d 459, 464 (D.C. Cir. 2006); AT&T Corp. v. FCC, 349 F.3d 692, 699-700 (D.C. Cir. 2003).  Under the second prong, one asks "whether postponement will impose an undue burden on the claimant or would benefit the court."  Nat'l Ass'n of Home Builders, 440 F.3d at 464; AT&T, 349 F.3d at 700.  Even if a challenged action is final and the issues purely legal, a case is not ripe for adjudication if it rests upon "contingent future events that may not occur as anticipated or may not occur at all."  Texas v. United States, 523 U.S. 296, 300 (1998); see Navegar, Inc. v. United States, 103 F.3d 994, 998 (D.C. Cir. 1997).  In applying

---

[1] The ripeness doctrine is "'drawn from both Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.'"  Nat'l Park Hospitality Ass'n v. Dep't of Interior , 538 U.S. 803, 808 (2003) (quoting Reno v. Catholics Social Services, Inc., 509 U.S. 43, 57 n.18 (1993)).  The constitutional aspect of ripeness requires that the plaintiff face an injury in fact that is certainly impending, while the prudential aspect focuses on the fitness of the issues for judicial decision.  See Nat'l Treasury Employees Union, 101 F.3d at 1427.  The Court need not decide which consideration predominates here because, in either circumstance, ripeness is a threshold inquiry that must precede adjudication on the merits.  See Toca Producers v. FERC, 411 F.3d 262, 265 (D.C. Cir. 2005).

these standards to petitioner's claim, the Court concludes that the petition is not ripe.

Turning first to the "fitness of the issue for judicial decision," and specifically the finality of the action, the Court does not accept respondent's conclusory assertion that the extension of petitioner's ADSO was "not sufficiently finalized" simply because it was "later changed back to June 30, 2007," in light of the plain language of the Army's memorandum to petitioner. See Resp't's Br. at 4. An agency action is final if it is "a consummation of the agency's decision making process," not merely tentative or interlocutory, and it is "one by which rights or obligations have been determined, or from which legal consequences flow." Harris v. FAA, 353 F.3d 1006, 1010 (D.C. Cir. 2004) (citing Bennett v. Spear, 520 U.S. 154, 177-78 (1997)); see also Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n, 324 F.3d 726, 734 (D.C. Cir. 2003). Under those standards, the notice appears to be final because it unequivocally states that the contract has been amended: "Although you signed a training agreement obligating you until June 30, 2007, *it is amended by this notification*. If you believe your obligation is still incorrect, you may submit to the Army Board for Correction of Military Records (ABCMR) for their adjudication." Pet. Ex. 5 (emphasis added). The notice thus represents itself to be a self-effectuating amendment to petitioner's agreement with the Army (in contrast to a proposal) and, indeed, advises petitioner to pursue adjudication to resolve any objections.

But "a final agency action can nonetheless be unripe for judicial review" if further proceedings affecting the agency action take place or judicial consideration of the issue would benefit greatly from a more concrete setting. See Pfizer, Inc. v. Shalala, 182 F.3d 975, 980 (D.C. Cir. 1999); see also Toca Producers v. FERC, 411 F.3d 262, 266 (D.C. Cir. 2005) (declining to review a final agency action under the ripeness doctrine because pending agency proceedings could provide relief to petitioners). Here, such further proceedings have clearly affected the

agency action challenged by petitioner.  The Army undertook further review of the matter, resulting in restoration of the ADSO date sought by petitioner.  Owens Decl. ¶ 6.  Moreover, the issue presented is not purely legal, but instead involves both the interpretation of the various versions of Department of Defense Directive 6000.2 and application to a particular contract. Indeed, a memorandum from the Department of Defense Office of General Counsel noted the importance of individual contract terms as a qualification on its conclusions regarding the impact of the 1988 directive on contracts signed before its effective date.  See Mem. from Robert D. Gilliat to Col. Joseph E. Salko, Oct. 20, 1988 ("OGC Mem.," Pet. Ex. 6) ("this office will not attempt to interpret the applicable terms of each of the service contracts").[2]  In the absence of an Army determination that the 1988 version of the directive applies to petitioner's contract, the Court lacks a concrete setting for determining the scope of the directive and the meaning of the contract.

     Moreover, the balance of hardships does not require consideration of the claim at this time. Petitioner contends that the Army's actions have created uncertainty surrounding the date on which his ADSO expires, preventing him from planning his post-military career.  However, it is undisputed that petitioner has a current ADSO expiring on June 30, 2007.  There is little more that the Court can properly grant, except for greater certainty.  But that would suggest judicial intervention in every unripe case.  The Supreme Court has rejected the proposition that facing

---

  [2]  To be sure, the memorandum contains sweeping language indicating that there are legal impediments to application of the directive to officers who signed Health Profession Scholarship Program contracts before 1988.  OGC Mem. at 1 ("the directive change discussed above [6000.2] should not be relied upon as a legal basis to alter any active duty obligations which had been incorporated into the AFHPSP contracts prior to the date of the change").  But it also recognized the importance of individual contract terms, as noted above, and as is evident in its acknowledgment that contracts may legitimately be modified by mutual agreement on some other ground, such as offering GME applicants a "preference" in the selection process in exchange for a longer ADSO term.  Id. at 1-2.

uncertainty as to the validity of agency action constitutes a hardship.  See National Parks Hospitality Ass'n, 538 U.S. at 811 (explaining that if "mere uncertainty" in business transactions constituted hardship "courts would soon be overwhelmed with requests for what would essentially be advisory opinions"); Toca Producers, 411 F.3d at 266 (same).

    The ripeness doctrine counsels that courts should refrain from deciding cases where the injury is speculative, and may never occur, because such cases are premature for review.  Texas, 523 U.S. at 300 (action seeking declaratory judgment as to impact of the Voting Rights Act on state-appointed management teams for school districts was unripe because appointment of such teams was contingent on a number of factors); Am. Historical Ass'n v. Nat'l Archives and Records Admin., 310 F. Supp. 2d 216, 229-30 (D.D.C. 2004) (researchers' claim that the executive branch improperly withheld presidential records was unripe, where the records were released to the public during the pendency of the suit and lack of future access to records was speculative).  Petitioner offers only speculation as to a future extension of his ADSO.  Although possible, such an injury is purely hypothetical at this time.  Petitioner's ADSO currently reflects the expiration date he seeks, June 30, 2007, and nothing in the record suggests that the Army will again apply the 1988 version of the directive to alter the ADSO before it expires.[3]  "The mere

---

[3] Respondent also contends that the lack of "*current*" unlawful custody deprives the Court of jurisdiction because unlawful custody is a jurisdictional prerequisite to habeas relief.  See Resp't's Br. at 5-6.  Unlawful custody is, of course, such a prerequisite (see 28 U.S.C. § 2241(c)(1); Maleng v. Cook, 490 U.S. 488, 490 (1989)), but consistent with this requirement, the writ is available to attack future unlawful confinement.  Preiser v. Rodriguez, 411 U.S. 475, 487 (1973); Razzoli v. Fed. Bureau of Prisons, 230 F.3d 371, 374 (D.C. Cir. 2000).  Thus, if the Army had not reversed the extension, the allegation of future unlawful custody would have sufficed for habeas jurisdiction.  However, just as the restoration of petitioner's original June 30, 2007 ADSO has made his claim nonjusticiable, it has also resulted in the absence of future unlawful confinement.   It is this turn of events that makes the writ of habeas corpus unavailable to petitioner – rather than the "current" custody argument proffered by respondent.  Although present confinement under the conviction or sentence under attack is not required, habeas relief
(continued...)

potential for future injury . . . is insufficient to render an issue ripe for judicial review" absent a demonstration of a sufficient probability of injury.  Friends of Keeseville, Inc. v. FERC, 859 F.2d 230, 236 (D.C. Cir. 1988).

      B.      **Mootness**

At first blush, it may seem counterintuitive that a case could be both unripe and moot.  This case implicates both doctrines because the change in petitioner's ADSO status has resulted in the claim of unlawful custody being premised on future contingencies and thus unfit for judicial review (ripeness) while, at the same time, leaving nothing for the Court to remedy (mootness).  Indeed, legal commentary has suggested that the "multiplicity of justiciability doctrines contain many overlapping tests" that address the common goal of ensuring that a plaintiff is legally entitled to relief based on a nonspeculative injury.[4]  See Erwin Chemerinsky, A Unified Approach to Justiciability, 22 Conn. L. Rev. 677, 682, 696-97 (1990).  Hence, although ripeness may be the more appropriate analytical framework here, mootness will be assessed as well.[5]

---

   [3](...continued)
has never been extended to situations where the habeas petitioner suffers no restraint or concrete threat of future restraint.  Maleng, 490 U.S. at 492-93.

   [4] The speculative nature of the injury at issue -- future unlawful custody -- implicates yet another justiciability doctrine: petitioner's standing to pursue the habeas petition.  Standing requires that the petitioner suffer a concrete and particularized injury, one that is "actual or imminent, not 'conjectural' or 'hypothetical.'"  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  In light of the ripeness and mootness arguments asserted by the parties, and the Court's resolution of the petition on those grounds, the Court finds it unnecessary to address petitioner's standing.

   [5] This case lies in the unusual posture of petitioner, rather than respondent, raising the applicability of the mootness doctrine.  That posture is unusual because the party asserting mootness -- normally the respondent or defendant -- bears the burden of persuading the Court that the challenged conduct cannot reasonably be expected to recur.  Friends of the Earth, Inc. v.
(continued...)

A case is considered moot either "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496 (1969); see also Pharmachemie B.V. v. Barr Labs., 276 F.3d 627, 631 (D.C. Cir. 2002) (a case is moot if "events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future"). As the Supreme Court has put it, "mootness deprives us of the power to act; there is nothing for us to remedy, even if we were disposed to do so." Spencer v. Kemna, 523 U.S. 1, 18 (1998). Mootness is relevant here, as petitioner acknowledges (Pet'r's Reply Br. at 5-10), because the relief that petitioner seeks – a change of his ADSO to reflect a release date from Army service of June 30, 2007 – has already been afforded him through the Army's administrative action.[6] Petitioner contends, however, that this case falls within two exceptions to the mootness doctrine.

1.   **Voluntary Cessation of Unlawful Conduct**

Mere voluntary cessation of allegedly illegal conduct does not moot a case. Friends of the Earth, Inc. v. Laidlaw Envtl., 528 U.S. 167, 189 (2000); United States v. W.T. Grant Co., 345 U.S. 629, 632 (1953). However, a case may become moot if subsequent events make it clear that

---

[5](...continued)
Laidlaw Envtl., 528 U.S. 167, 189 (2000). Here, respondent contends that the case is not ripe in part because of the speculative nature of the harm petitioner asserts (future ADSO extension pursuant to the 1988 directive), yet respondent has not specifically addressed the reasonable expectation of such an occurrence in a mootness framework. It is nonetheless appropriate for the Court to evaluate mootness based on its own assessment of the record where, as here, mootness has been identified as a potential limitation on the Court's jurisdiction and the record contains adequate information to enable that assessment to occur.

[6] Petitioner asks the court to declare that his ADSO expires on June 30, 2007. That petitioner requests declaratory relief does not alter the mootness determination, because the jurisdictional prerequisite of a "Case" or "Controversy" applies with equal force to actions for declaratory relief. See Aetna Life. Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240 (1937).

the allegedly wrongful behavior could not reasonably be expected to recur. Laidlaw, 528 U.S. at 189; Am. Fed'n of Gov't Employees, AFL-CIO v. Brown, 866 F. Supp. 16, 19 (D.D.C. 1994). The heavy burden of persuading the Court that the challenged conduct cannot reasonably be expected to recur lies with the party asserting mootness. Laidlaw, 528 U.S. at 189; Brown, 866 F. Supp. at 19.

Petitioner alleges that the case falls within this exception to the mootness doctrine because there is a "real and imminent threat of another unlawful extension of petitioner's ADSO." Pet'r's Reply Br. at 8. According to him, this threat is evident from the fact that the Army has not assured petitioner that his ADSO will remain unchanged, and even admits in its brief that it is in the process of considering whether to modify petitioner's ADSO once again. This is a misstatement of the Army's position. More accurately, the Army has reserved its authority to take action should other future intervening events[7] provide a legal basis to change petitioner's term of service between now and June 30, 2007. Resp't's Br. at 5. Consistent with the mootness doctrine, an agency may reserve "the right to take future action that they are legitimately empowered to do using a valid procedure" so long as there is no reasonable expectation that the violation alleged will recur. See Montana Shooting Sports Ass'n, Inc. v. Norton, 355 F. Supp. 2d 19, 21 n.1. (D.D.C. 2004) (holding that rescission of the agency order under review mooted the case even though the agency reserved the right to take legally authorized future action). There is nothing in the record to suggest a reasonable expectation that the challenged conduct – another extension of petitioner's ADSO pursuant to the 1988 directive – will recur. Indeed, the

---

[7] The Army suggests that such intervening events might include the lack of a resignation request or an application of the stop-loss policy under which servicemembers alerted to deploy must remain in the unit until they return from deployment. See Resp't's Br. at 5 n.2 & 3. The Court makes no judgment in this case as to the validity of such hypothetical future actions.

declaration of Major Owens represents that the U.S. Army Human Resources Command has restored petitioner's ADSO to the correct date of June 30, 2007. Owens Decl. ¶ 6. The fact that the ADSO was once changed, and the Army's assertion that other future events could theoretically affect petitioner's ADSO, do not form a sufficient basis for placing this case within the voluntary cessation exception.

## 2. Capable of Repetition, Yet Evading Review

The mootness doctrine also does not apply to situations capable of repetition, yet evading review. Spencer, 523 U.S. at 17. This exception is reserved only for "exceptional situations" where both conditions are satisfied. Id. To be capable of repetition, there must be a reasonable expectation or demonstrated probability that the complaining party will be subjected to the same action again. Spirit of the Sage Council v. Norton 411 F.3d 225, 229-30 (D.C. Cir. 2005); PETA v. Gittens, 396 F.3d 416, 423 (D.C. Cir. 2005). Under the evading review prong, the question is whether "the challenged activity is by its very nature short in duration, so that it could not, or probably would not, be able to be adjudicated while fully live." Pharmachemie B.V., 276 F.3d at 633.

The wrong that is allegedly capable of repetition "must be defined in terms of the precise controversy it spawns." PETA v. Gittens, 396 F.3d at 422. The issue is not whether the Army will extend petitioner's ADSO on grounds not set forth in the present record, because, as the Army has explained, there might be legitimate reasons to modify petitioner's ADSO in the future. Rather, the legal wrong petitioner seeks to avoid is his unlawful retention in the Army pursuant to an allegedly improper retroactive application of the 1988 directive to determine his ADSO.

Here, the analysis under the "capable of repetition" prong mirrors the analysis under the "voluntary cessation" test. Petitioner claims that the controversy is capable of repetition because

14

the Army has previously both issued and retracted the challenged action unilaterally while failing to permanently commit to the June 30, 2007 date, and the Army is allegedly considering another extension of petitioner's ADSO.  But as the Court has already explained, the Army has represented that it is unable to permanently commit to a specific date only because other future events might affect petitioner's ADSO between now and June 30, 2007.  None of the hypothetical future events is a reversal on the applicability of the 1988 directive to recalculate petitioner's ADSO.  To satisfy the requirements of this prong, petitioner must show "a reasonable expectation" that the Army will extend his ADSO based on another allegedly unlawful application of the 1988 directive.  Although it is conceivable that the Army may reverse its position on the 1988 directive again, petitioner must show something more than mere possibility.  See Spencer, 523 U.S. at 19 (petitioner's habeas claim challenging allegedly unconstitutional parole revocation procedures is not capable of repetition because petitioner has not demonstrated a reasonable likelihood that he will once again be paroled and the parole revoked); Bois v. Marsh, 801 F.2d 462, 467 (D.C. Cir. 1986) (former army officer's discrimination claim is not capable of repetition because "there are too many variables to allow a prediction that appellant will again be subjected to an action of this sort"); Gittens, 396 F.3d at 424 (controversy is not capable of repetition because the claim depended on an attenuated fact pattern "unlikely to be duplicated in the future").  There is nothing in the record beyond conjecture to demonstrate a reasonable expectation that the Army will in the future extend unlawfully petitioner's ADSO.

      To the extent that petitioner's claims are capable of repetition, moreover, they will not evade review.  Petitioner's argument that his claim will evade review rests solely on the length of time elapsed between the initial change of his ADSO and its restoration.  Petitioner cites several cases which have held controversies lasting 18 months to two years to evade review.  See Pet'r's

Reply Br. at 9 (citing Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 514-16 (1911); First Nat'l Bank of Boston v. Bellotti, 435 U.S. 765, 774 (1978); In re Reporters Comm. for Freedom of the Press, 773 F.2d 1325, 1329 (D.C. Cir. 1985)). But simply comparing numbers is not helpful because the cases view the time periods referenced not as absolutes, but as factors relative to the availability of judicial review before it is too late to grant meaningful relief. For example, one case held that a challenge to an order sealing documents would evade review because the petitioners needed the documents before completion of trial and trials are typically of short duration. See In re Reporters Comm. for Freedom of the Press, 773 F.2d at 1329 & n.4. In another, a challenge to a law barring contributions by corporations to influence voting would evade review because of the brief period between legislative authorization of the ballot measure and its submission to voters. See Bellotti, 435 U.S. at 774. Petitioner has not demonstrated that, if the Army were to change his ADSO, he would not be able to obtain judicial review before his earlier date of release, which is currently seven months away. See Spencer, 523 U.S. at 18 (habeas action after petitioner's sentence had expired challenging parole revocation procedures does not evade review because petitioner has not shown that the time between parole revocation and expiration of a sentence is always so short as to evade review); District of Columbia v. Jeppsen, Civ.A.No. 05-1309, 2006 WL 1992628 at *3 n.5 (D.D.C. July 13, 2006) (claim does not evade review because it is not clear that the duration of the challenged action will always be too short to be litigated).

III.    **Exhaustion of Administrative Remedies**

To the extent that petitioner is seeking a correction of his records removing all reference to the purported extension of his ADSO from June 30, 2007 to June 30, 2010, petitioner first must exhaust his administrative remedies before the Army Board for Correction of Military

Records ("ABCMR"). The ABCMR was established pursuant to 10 U.S.C. § 1552, and is charged with determining the existence of error or injustice in Army records, and, if warranted, it may recommend or direct their correction. 32 C.F.R. § 581.3(c)(2)(i). Whether to entertain the suit before the administrative procedure has been exhausted is within the discretion of the Court, rather than an issue of subject matter jurisdiction. MacKay v. Hoffman, 403 F. Supp. 467, 471 (D.D.C. 1975); Turner v. Callaway, 371 F. Supp. 188, 192 (D.D.C. 1974). Where relief is available from the ABCMR, the administrative remedy should be exhausted unless the party invoking the court's jurisdiction can demonstrate special circumstances. Bois, 801 F.2d at 468; MacKay, 403 F. Supp. at 472; Turner, 371 F. Supp. at 192. Several factors are relevant in deciding whether exhaustion will be required: 1) the Army's interest in handling internal complaints, 2) the presence of technical issues of fact, 3) the presence of issues whose resolution depends on interpretation of military regulations, 4) the Army's interest in construing its own regulations for the sake of uniformity, and 5) the court's interest in avoiding ruling on unnecessary questions. See Turner, 371 F. Supp. at 192 (citing Sohm v. Fowler, 365 F.2d 915, 917-18 (D.C. Cir. 1966)).

      Petitioner was directed by the Army to pursue his claim in front of the ABCMR. Because petitioner agrees that his ADSO runs through June 30, 2007, there are no special circumstances in this case that would warrant deviation from the rule requiring exhaustion of the military remedies. See Bois, 801 F.2d at 468 (an officer seeking declaratory relief solely to correct her military record is required to exhaust administrative remedies in front of the ABCMR); Hayes v. Sec'y of Def., 515 F.2d 668, 675 (D.C. Cir. 1975) (officer not required to exhaust administrative remedies where the delay attendant upon a petition to the ABCMR would significantly increase the length of time of his involuntary military service).

The ABCMR was specifically designed to hear claims involving the correction of military records.  See 10 U.S.C. § 1552(a)(1); 32 C.F.R. § 581.3(a).  It is in the best position to provide any relief to which petitioner may be entitled.  In Schaefer v. Cheney, 725 F. Supp. 40 (D.D.C. 1989), the court addressed a claim similar to petitioner's, where graduates of a military academy and a medical school who had received conflicting representations regarding the expiration dates of their ADSOs sought to establish a determinative date of release.  The court required the plaintiffs to exhaust their remedies before the ABCMR prior to seeking judicial review.  Id. at 51.  The reasoning employed by the court in Schaefer applies here as well:  The ABCMR simply is "more knowledgeable about [the Army's] structure and operations."  Id.  The calculation of ADSOs and the correction of military records are internal issues that should be resolved first by the ABCMR before presentation to the courts.

## CONCLUSION

For the foregoing reasons, petitioner's application for writ of habeas corpus will be dismissed.  A separate order will be issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated:   November 29, 2006